**THANET CORPORATION**

v.

**The UNITED STATES.**

No. 263–76.

United States Court of Claims.

Jan. 24, 1979.

Garrett M. Heher, Princeton, N. J., attorney of record, for plaintiff. Smith, Stratton, Wise & Heher and Todd D. Johnston, Princeton, N. J., of counsel.

Thomas L. McKevitt, Washington, D. C., with whom was Asst. Atty. Gen. James W. Moorman, Washington, D. C., for defendant. Dorothy R. Burakreis, Washington, D. C., of counsel.

Before DAVIS, KASHIWA and BENNETT, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

KASHIWA, Judge:

This case comes before the court on defendant's motion and plaintiff's cross motion for summary judgment. The plaintiff seeks $900,000 in damages for an alleged breach of contract by the United States Postal Service. Having considered the briefs, exhibits, and arguments submitted by both parties, we find in favor of the Government.

The facts are undisputed. On April 4, 1967, an instrument was executed by the Thanet Corporation and submitted to the

Postal Service. It offered a five-acre site for the construction of a leased post office in Princeton, New Jersey. Paragraph 9 of the agreement recited the parties' understanding that the Government proposed to transfer and assign its rights to a "lease contractor" who would construct and lease back the postal facility to the Government. The lease was to run for a "primary term" of 20 years, commencing on the day of the assignment to the successful lease contractor. No rent was due until commencement of the primary term. If a responsible lease contractor could not be found within 18 months, the agreement was to terminate.

Paragraph 18 of the contract required the lease contractor to comply with all applicable state, county, and municipal regulations in constructing the post office on the demised premises. Paragraph 18A provided that the agreement was subject to any necessary approval by Princeton Township municipal authorities of the construction of a post office on the premises.

In June and July of 1967 Thanet filed two alternative applications with the Princeton Township Board of Adjustment which sought zoning variances consistent with the use of the land for construction of a post office. On September 7, 1967, the Board denied the applications. On October 20, 1967, Thanet filed a complaint in the Superior Court of New Jersey seeking a reversal of the decision. On December 18, 1967, Thanet filed an amended complaint adding a second count which sought a declaration that the property in question would not be subject to the zoning authority of Princeton Township as long as it was actually used by the Postal Service or its assignee as a general post office.

To eliminate some of the technical defenses in the court proceedings, Thanet suggested revisions of paragraphs 18 and 18A. These revisions were intended to make it clear that the Government did not agree to waive any immunity it might enjoy from state or local regulations. On August 8, 1968, the agreement, as amended, as well as an addendum dated July 17, 1968, was executed by R. W. Wilson, Assistant Director

for Realty Management, on behalf of the Postal Service. James F. Noone, Chief of the Real Estate Branch of the Postal Service's Philadelphia Region, notified Thanet of the acceptance by letter dated August 13, 1968.

As previously noted, paragraph 10 of the agreement provided that if the Government was unsuccessful in its efforts to obtain a responsible lease contractor within 18 months, the agreement would terminate. That period was to begin on April 4, 1967, and end on October 4, 1968. The addendum to the contract extended the period for an additional 12 months, to October 4, 1969. The possibility of a second 12-month extension was also raised in the addendum. This second extension could only be invoked by the Government, and the Government's right to extend the period was conditional.

On January 9, 1969, the New Jersey Superior Court, Trial Division, granted Thanet's motion for summary judgment on the ground that the property at issue was not subject to any of the provisions of the zoning and land subdivision ordinances of Princeton Township. *Thanet Corp. v. Board of Adjustment,* 104 N.J.Super. 180, 249 A.2d 31 (1969). Princeton Township appealed. Upon learning that the Township authorities would appeal the trial court's decision, Thanet twice advised the Postal Service that it was unwilling to continue the court battle unless the Service assumed the litigation expenses. The Postal Service did not respond to these letters.

By letter dated November 5, 1969, Thanet's president, Ridgely Cook, advised the Postal Service that if he did not have a signed extension of the agreement by November 15, 1969, he would request that the appeal be dropped. Again, the Postal Service did not respond to Thanet's request.

On December 10, 1969, the New Jersey Superior Court, Appellate Division, affirmed the decision of the trial court. 108 N.J.Super. 65, 260 A.2d 1 (1969). The Township sought to have the Supreme Court of New Jersey review the Appellate Division ruling.

By letter dated February 10, 1970, Thanet's president advised the Postal Service that due to its lack of interest and financial support Thanet would neither extend the lease nor continue the appeal in the New Jersey Supreme Court. On that same day, the court denied certification. 55 N.J. 360, 262 A.2d 207 (1970). After learning that the court had refused to hear the case, Mr. Cook wrote a letter to the Postal Service on February 12. In that letter he stated:

> Would you please contact me at your earliest convenience to let me know whether you plan to go ahead with the post office. If so I would like to negotiate a lease with you.

In response to Mr. Cook's letter, Mr. Noone advised him that the whole project was being reviewed at the headquarter's level.

By letter of March 30, 1970, Thanet's attorney informed the Postal Service that his client believed that the agreement remained in effect. He explained that Thanet would look to the Government for full performance if the United States Supreme Court either denied certiorari or affirmed the holding of the New Jersey courts.

In response to an inquiry by Township authorities, the Postal Service pledged, in a letter dated April 27, 1970, that it would not seek to have a post office constructed on any site unless it received the approval of all municipalities and agencies. The Township allowed the time in which to petition the United States Supreme Court for certiorari to expire on May 10, 1970.

Mr. Noone informed Thanet on June 30, 1970, that the Postal Service would not further consider the construction of a postal facility under their agreement. He stated that the Government felt that it would not be able to obtain a responsible lease contractor by using the Thanet site. Thanet filed this petition on June 28, 1976.

Plaintiff's theory of the case is that the instrument accepted by the Government in August 1968 was a bilateral contract. The period for performance of the agreement, as extended by the addendum, was 30 months. Under certain circumstances, the period for performance could be extended by the Government for an additional 12 months. Plaintiff argues that the Government exercised its option to extend the period for performance for the additional one-year period, until October 4, 1970. Mr. Noone's letter of June 30, 1970, notifying Thanet that the Government would not perform under the contract, is thus said to be a material breach of the agreement.

Defendant describes the instrument in question as an option to lease rather than a bilateral contract. It argues that the Government made no promise to perform, and was under no duty to perform until it assigned the lease to a responsible lease contractor. The defendant further argues that even if it had a duty to make a good faith effort to find a lease contractor, such duty terminated on October 4, 1969, when the time for performance expired in accordance with the terms of the addendum. It denies that the Government exercised its option to extend the period for performance. Since the contract terminated on October 4, 1969, and this petition was filed on June 28, 1976, the defendant asserts that the claim is barred by the statute of limitations. 28 U.S.C. § 2501 (1976).

Fortunately, we need not characterize the agreement in question as either a bilateral contract or an option to lease. While we note our agreement with the Government's statement that this is "an unusual legal instrument," the precise label which we attach to it is not important to our holding. The central purpose of the transaction—to allow the Government to find a contractor which would lease the land, build a post office, then lease the land and the building back to the Government—was understood by both parties. Thanet clearly recognized the necessity of obtaining any legally necessary zoning variances for construction of a post office on the proposed site. The parties agreed to a 30-month time period within which the Government could assign the lease to a responsible lease contractor. The right to extend the period for one additional year was reserved to the Government. This right, however, was subject to a condition precedent.

The language of the July 17, 1968, addendum is crucial to our decision. It provided:

 If Princeton Township authorities or the courts should decide that a postoffice [sic] can be constructed on the demised premises within the period, the United States Government will be allowed to extend the time for another 12 months after the first extension. All other terms and conditions in the lease are then same [sic].

This language controls the disposition of the two primary issues in this case. First, whether the condition precedent to the Government's right to extend the period of performance was fulfilled on October 4, 1969. Second, if the condition was fulfilled, whether the Government exercised its right to extend the period of performance. We decide both questions in the negative.

The terms of the agreement provided that it would terminate on October 4, 1969, unless the Government exercised its option to extend the period for performance. The Government's right to extend was conditioned on the Township authorities or the "courts" deciding, before October 4, 1969, that a post office could be constructed on the premises which were the subject of the agreement. On January 9, 1969, the New Jersey Superior Court, Trial Division, ruled that the local zoning restrictions would not apply to the proposed site as long as it was used for a post office facility. By March of that year the Township authorities had filed an appeal. Plaintiff contends that the ruling of the Superior Court judge fulfilled the condition precedent to the Government's power to extend the period for contract performance. It asserts that it would be unreasonable to interpret the language as requiring the exhaustion of all possible appeals, because such a condition could not be fulfilled within the period provided for in the addendum.

 We disagree. Provisions of a contract must be construed so as to effectuate the spirit and purpose of the contract. The agreement must be considered as a whole, and interpreted so as to harmonize and give meaning to all its provisions. *ITT Arctic Serv. Inc. v. United States,* 524 F.2d 680,

684, 207 Ct.Cl. 743, 751–752 (1975); *Northwest Marine Iron Works v. United States,* 493 F.2d 652, 657, 203 Ct.Cl. 629, 637 (1974). Words are to be given their plain and ordinary meanings. *See Timber Access Industries Co. v. United States,* 553 F.2d 1250, 1256, 213 Ct.Cl. 648, 658 (1977); *Whelan v. United States,* 529 F.2d 1000, 1002–1003, 208 Ct.Cl. 688, 693 (1976). If the meaning to be attributed to a provision is ambiguous, and reasonable men could interpret the contract in different ways, the interpretation will be given to the document which is more favorable to the party who did not draw the provision. *Kenneth Reed Construction Corp. v. United States,* 475 F.2d 583, 587, 201 Ct.Cl. 282, 289 (1973); *Sturm v. United States,* 421 F.2d 723, 727, 190 Ct.Cl. 691, 697 (1970).

 Plaintiff drafted the language of the addendum. The interpretation which it urges us to adopt is inconsistent with that language. The word "courts" when used in the ordinary manner is not reasonably interpreted to mean only one Superior Court. Such an interpretation is also inconsistent with the general purpose of the agreement. If we accept, *arguendo,* that the defendant had promised to make a good faith effort to seek a lease contractor, the acquiescence of a single court to the proposed construction does not put the Government in a position to perform its obligation. No responsible lease contractor would enter into a lease, and then begin construction of a postal facility, while the ruling that no zoning variances were necessary was open to reversal by a higher court.

We are not persuaded that the condition, when interpreted to require exhaustion of all possible appeals, is impossible to fulfill within the period contemplated by the addendum. The condition, in effect, required resolution of the zoning dispute by October 4, 1969. The provision would have been fulfilled by either a settlement agreement with the Township authorities or a decision by the Township authorities to forego its appeal after the Superior Court, Trial Division, had ruled. Since the plaintiff did not *promise* to obtain the necessary zoning

within the year, it is not unusual that the fulfillment of the condition was not totally within its control. A condition creates no right or duty, and is merely a limiting factor. *See* 3A A. Corbin, *Corbin on Contracts*, § 633 (1960).

Even if we were to find that the addendum's conditional language had been fulfilled, we could not find that the Government had exercised its option to extend the period. Plaintiff argues that the Government's failure to indicate that it did not wish to exercise its option should be interpreted as an expression of an intention to extend the period. It contends that the Government's failure to act, when examined in light of its previously expressed intentions and its knowledge that Thanet was incurring legal fees and expenses in defending the appeals of the Trial Division ruling, supports this interpretation. It cites to statements in newspaper articles, correspondence between the Postal Service and certain United States Senators, correspondence between Postal authorities and Princeton Township officials, as well as internal Postal Service memoranda—all in an effort to establish that Government officials thought that the period for performance had been extended and that the contract remained in effect.

■ We agree that the Government could have been more forthright about its position in this matter. We fail to see, however, the particular relevance of the Government's belief about whether the period for performance had been extended. The focus should be on what the Government communicated to the plaintiff rather than on what the Government believed. The general rule is that if an offer is of such a kind that the offeror needs to know of the acceptance in order to determine its subsequent action, and the offeree has reason to know this, a notice of acceptance must be given. 1 A. Corbin, *Corbin on Contracts* § 67 (1960). Certainly if the Government was attempting to enforce the contract against the plaintiff, and argued that its actions should be construed as a sufficient exercise of its option to extend

the period of performance, we would require the Government to show not only that it intended to exercise the option, but also that it had communicated its intention to Thanet in a reasonable manner.

■ The plaintiff has not explained why we should demand any less in this case. It analogizes this option in the Government with an option to renew a lease. The case which plaintiff cites as explaining the test for determining whether such an option has been exercised requires the following:

[C]onduct * * * which reasonably apprizes the landlord of the tenant's desire to enjoy the additional term * * *. [*Wallworth v. Johnson*, 25 N.J.Misc. 449, 451, 55 A.2d 305, 306 (Sup.Ct.1947).]

The plaintiff has failed to show any evidence of statements or conduct by any duly authorized Postal official which reasonably apprized it of the Government's intention to extend the period for contract performance. Comments by the local Postmaster in the local newspaper cannot reasonably be construed as being a binding commitment by the Postal Service to take an action. The correspondence with the United States Senators and with Township authorities, as well as statements in internal Government memoranda, was not communicated to plaintiff.

■ The plaintiff has offered no persuasive reasons to support its theory that the Government had a duty to affirmatively waive its right to exercise the option. Under the circumstances it was all but impossible for the Government to understand that Thanet would view its silence as consent. Mr. Cook's letters of November 5, 1969, and February 10 and 12, 1970 collectively expressed a clear understanding of the Thanet Corporation that the agreement had not been extended. Accepting the plaintiff's contention that these letters were written only at the suggestion of a Postal official, Mr. Parsons, and only to encourage Mr. Parsons's superiors to act expeditiously, we find that these letters, at the very least, notified the Government that it was required to act affirmatively if it wished to exercise its option. Since the Government

took no action, we must construe its silence, under these circumstances, as a failure to exercise its option to extend the period for contract performance.

Plaintiff argues, in the alternative, that the defendant should be estopped from denying that it exercised its option. In the proper circumstances the doctrine of estoppel may be applied against the Government. Such an estoppel, however, may not be based on the unauthorized representation or act of an officer or employee who is without authority in his individual capacity to bind the Government. *Emeco Industries, Inc. v. United States,* 485 F.2d 652, 202 Ct.Cl. 1006 (1973); *Branch Banking & Trust Co. v. United States,* 98 F.Supp. 757, 120 Ct.Cl. 72, *cert. denied,* 342 U.S. 893, 79 S.Ct. 200, 96 L.Ed. 669 (1951). One who deals with the Government assumes the risk that the officials with whom he deals have no authority. *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 385 (1947).

To the extent that the plaintiff depends on the materials discussed above which were not communicated to it, there could be no reasonable reliance. To the extent that the plaintiff depends on statements made by Postal officials, it must prove that these officials were acting within the scope of their authority. The plaintiff has failed to allege that the officials in question, Mr. Dilworth, Mr. Parsons, or Mr. Noone, were authorized to make the statements on which it alleges it relied. Mr. Noone and Mr. Parsons have stated by affidavits that they had no contracting authority with regard to this agreement. Mr. Cook knew that the agreement had been executed by R. W. Wilson, but he never personally dealt with Mr. Wilson. If, as the plaintiff alleges, Mr. Cook only wrote his letters of November 5, 1969, and February 10 and 12, 1970, so that Mr. Parsons could show them to his superiors, this is evidence that Mr. Cook realized that the decision-making authority did not rest with Mr. Parsons, but with his superiors in Washington. We simply find no evidence that the officials who made the statements upon which the plaintiff allegedly relied had the authority to bind the Government. Therefore, we must reject plaintiff's estoppel theory.

Accordingly, plaintiff's cross motion for summary judgment is denied, and defendant's motion for summary judgment is granted. Plaintiff's petition is dismissed.

DAVIS, Judge, concurring in part:

I concur in the result and in Judge Kashiwa's opinion except for the part holding that the condition precedent to the Government's right to extend the period of performance had not been fulfilled on October 4, 1969. I abstain from joining in that portion of the opinion because I believe that, if the Government had duly chosen to extend the time for another 12 months (which in fact it did not do), the extension would have been valid.