**A & K PLUMBING & MECHANICAL, INC.**

v.

**The UNITED STATES.**

No. 128–82C.

United States Claims Court.

March 7, 1983.

Richard D. Corona, San Diego, Cal., for plaintiff.

Lorraine B. Halloway, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant. J. Stuart Gruggel, Jr., Office of General Counsel, U.S. Dept. of the Navy, Washington, D.C., of counsel.

## OPINION

SETO, Judge:

This Government contract case is before the court on cross-motions for summary judgment regarding plaintiff's claim for equitable adjustment on an appeal to the Armed Services Board of Contract Appeals (ASBCA). ASBCA denied plaintiff's claim as being without merit.

For the reasons stated below, the court finds that plaintiff's claim for an equitable adjustment is based upon a reasonable interpretation that paragraph 7.5 of its contract did not require plaintiff (A & K Plumbing & Mechanical, Inc., hereinafter, "A & K") to varnish all existing kitchen cabinets. The case is to be remanded to ASBCA for a factual determination of the ambiguity in the contract and whether plaintiff had a duty to seek clarification of the ambiguity prior to submission of its bid.

## FACTS

Plaintiff, A & K Plumbing & Mechanical, Inc., was awarded a fixed-price contract No. N62474–77–C–2515 in the amount of $2,085,000 to perform repair and improvement work on a housing project at Ocotillo Heights, Marine Corps Base, Twentynine Palms, California, on September 30, 1977. Part of the work to be performed required modifying and relocating certain kitchen cabinets in the housing units. After working on the kitchen cabinets, the contractor was required to varnish the cabinets.

The contract contained provisions with specific directions as to work to be performed plus a number of drawings of the kitchens and bathrooms where remodeling was to be performed. Drawing sheet A–4 listed the Items of Work.[1] Sheet A–5 showed there were seven different kitchen plans in the 250 housing units. It, also, showed the existing kitchens and how the remodeled kitchens were to appear. Sheets A–6, A–7, and A–8 contained several elevations for the seven kitchen types. The elevations were of the existing and new kitchens. Sheet A–8 showed existing cabinet sections and new cabinet sections. The numerical symbols [2] denoting Items of Work were shown on the plans and elevations in various combinations. One symbol appeared in all of them, while one symbol appeared only on one of the plans and its corresponding elevation. Symbol 14, however, did not appear on any of the plans or elevations. Symbol 14 was the indicator for "Paint kitchen—all units."

Sometime after the work was completed on the kitchen cabinets in some of the units, on or about February 21, 1978, plaintiff was notified by defendant to revarnish *all* the remaining existing kitchen cabinets in the units where any work had been performed on any part of the entire kitchen,[3] rather than just those kitchen cabinets whose parts had been remodeled. This was the first time the subject of varnishing *all* kitchen cabinets (even if the kitchen cabinet itself had not been remodeled) had been discussed. Only at this time did defendant assert that *all* surfaces of *all* kitchen cabinets had to be revarnished even if the remodeling work did not take place on the kitchen cabinets.

Mr. Cates, A & K's project manager, informed the Government by letter that he disagreed with defendant's interpretation. Despite plaintiff's letter, defendant directed A & K to provide the labor, material, and equipment to do the revarnishing.

On March 1, 1978, A & K reiterated in two letters its disagreement with the defendant's interpretation of the contract concerning varnishing all the cabinets. The following excerpt from one of plaintiff's letters clearly sets forth A & K's contentions:

> This paragraph is very explicit in that 'These surfaces (existing previously painted or varnished) * * * where work has been performed * * * shall receive two coats. Color and gloss * * * shall match existing work.'
>
> A & K Plumbing & Mechanical interprets this paragraph as follows: Where existing painted or varnished surfaces are modified, or work performed on, *then those surfaces and those surfaces only shall receive two coats of paint or varnish. Said paint or varnish 'shall match existing work' on surrounding surfaces.* [Emphasis supplied.]
>
> At no point in Section 9D, Paragraph 7.5 does it state in any way that *all* existing previously painted or varnsihed [sic] surfaces shall receive two coats. [Emphasis in original.] [4]

1. Of the drawing sheets appended to the contract depicting floor plans of the kitchens and bathrooms where work was to be performed, 8 drawings (A–4 through A–12) were referred to in ASBCA's opinion.

2. Each drawing contained numerical symbols corresponding to the Items of Work listed on sheet A–4.

3. Plaintiff was notified by Mr. Dean Bernett, a representative of the Government.

4. ASBCA 23436, Nov. 28, 1980. On October 27, 1978, the contracting officer denied A & K's claim. A timely appeal by A & K followed.

Mr. Cates' letter contained an estimate for refinishing all surfaces of the kitchen cabinets in the amount of $36,816. This supplemental refinishing was considered by A & K to be beyond the scope of work as construed from contract paragraph 7.5.

## DISCUSSION

■ The court's power to review this appeal from ASBCA is based upon the Wunderlich Act (41 U.S.C. § 322) which provides that:

No Government contract shall contain a provision making final on a question of law the decision of any administrative official, representative, or board.

May 11, 1954, ch. 199, § 2, 68 Stat. 81. This provision provides that ASBCA's decision on plaintiff's claim for equitable adjustment is not binding on the court. Recently, the Court of Appeals for the Federal Circuit stated, "analysis and legal conclusions drawn by the board are not entitled to any finality. 41 U.S.C. §§ 321, 322. Its decision was based upon one interpretation of the contract provisions by which * * * we are [not] bound." *See Teledyne Lewisburg v. United States,* 699 F.2d 1336 (1983). Thus, the interpretation of the contract language in dispute is a matter of law for the court to decide. *Jamsar v. United States,* 194 Ct.Cl. 819, 442 F.2d 930 (1971); *Dynamics Corp. of America v. United States,* 182 Ct.Cl. 62, 389 F.2d 424 (1968).

As the court in *Hol-Gar Mfg. Corp.* so aptly stated:

It has been consistently held by this court that the interpretation of the language of the contract is a question of law, not a question of fact, and thus prior administrative determination on such a question is not final or binding on the court.

*Hol-Gar Mfg. Corp. v. United States,* 169 Ct.Cl. 384, 386, 351 F.2d 972, 974 (1965).

■ Based on the court's authority to review decisions of appeal boards, the court can make determinations on questions of law. However, in making such determinations, it is precluded from accepting or considering any evidence beyond that obtained by the board. *United States v. Anthony Grace & Sons, Inc.,* 384 U.S. 424, 86 S.Ct. 1539, 16 L.Ed.2d 662 (1966); *United States v. Carlo Bianchi,* 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963).

In *Bianchi,* the Court cautioned us on this point, saying:

[T]he Court of Claims is confined to review of the administrative record under the standards in the Wunderlich Act and *may not receive new evidence.* [Emphasis supplied.] *Id.* at p. 718, 83 S.Ct. at 1415.

*See also, United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966); *Honeywell, Inc. v. United States,* 228 Ct.Cl. ——, 661 F.2d 182 (1981).

In the case at bar, further findings are required regarding interpretation of a contract provision, *e.g.,* paragraph 7.5. The contract provision involved, which is the subject of the disputed interpretation, is located subsequent to Section 6A of the contract which concerns wood cabinets and countertops. It is subsumed under Section 9D on "Painting.". The pertinent parts of the contract are as follows:

3. REMOVAL AND REMODELING WORK: Remove existing cabinets and countertops where indicated and as required to make modifications to receive new countertops, range hoods, dishwashers, drawers and plumbing fixtures. Modification work in exposed locations shall match existing work in all respects, including joinery, workmanship, hardware, and species and quality of wood. Conspicuous patchwork in exposed locations will be unacceptable; do not splice or patch wood members between existing joints. Cutouts for pipes, vents, and fixtures shall be neatly made for continuous snug fit unless holes are covered by eschutcheons, hudee [sic] rings, or integral flanges.

Section 9D, Painting, provided in part, as follows:

7.3 Wood, Interior, New Doors and Cabinetwork Surfaces Natural Finish: These surfaces shall be coated with three

coats of water-resisting spar varnish conforming to TT–V–109, except that interiors of cabinets and vanities shall receive two coats.

\*    \*    \*    \*    \*    \*

7.5 *Existing Previously Painted or Varnished Surfaces: These surfaces in bathrooms and kitchens where work has been performed under this contract shall receive two coat [sic] of enamel or varnish as specified for new work.* Color and gloss except as otherwise indicated or directors [sic], shall match existing work. [Emphasis supplied.]

\*    \*    \*    \*    \*    \*

9. SURFACES NOT TO BE FIELD PAINTED: Existing interior and exterior surfaces in areas where no work has been performed \* \* \*.

Drawing sheet A–4 contains Items of Work. The relevant ones provide as follows:

\*    \*    \*    \*    \*    \*

3. Remove existing wall cabinet.

4. Modify existing wall cabinets to accomodate [sic] dishwasher.

5. Modify existing sink cabinet.

6. Modify existing cabinet to drawer cabinet.

7. Modify existing wall cabinet to accomodate [sic] range hood and vent.

\*    \*    \*    \*    \*    \*

13. Relocate and modify existing cabinet.

14. Paint kitchen—all units.[5]

Defendant asserts that its interpretation is the only proper and reasonable interpretation.[6] It relies on grammatical structure and construction asserting that the arrangement of words and the punctuation in paragraph 7.5 indicate that the phrase "where work has been performed" modifies "bathrooms and kitchens" rather than "surfaces."[7]

Defendant contends that the intended meaning was that, in any kitchen or bathroom where work was performed—whether on the cabinets or not—all previously painted or varnished surfaces were required to be varnished. The cabinets were to be coated with a varnish that would produce a finish like that existing when the cabinets were installed or last refinished.

Plaintiff, on the other hand, asserts that no varnishing was required of those cabinets which were not modified or worked upon. In effect, by this interpretation, plaintiff believed it was only required to varnish a portion of a cabinet that had been cut away to make room for a new addition and there varnish would be applied to make it match existing work.

Plaintiff argues that, in reference to paragraph 7.5, "where work has been performed" refers to "surfaces," not to "bathrooms and kitchens." Moreover, it contends that the insertion of "bathrooms and kitchens" serves to set off cabinet surfaces in other areas of the housing unit.

In addition, plaintiff relied on the last sentence of paragraph 7.5, which states that "[c]olor and gloss *except as otherwise indicated or directors [sic], shall match existing work.*"[8] (Emphasis supplied.) This sentence indicated to plaintiff that there were worked-upon surfaces to be matched. Plaintiff adduces that its interpretation does not render any portion of the contract superfluous, and thus, is a reasonable interpretation too. Thus, by plaintiff's construction, two coats of varnish were to be applied only to the cabinet surfaces on which work was to be performed.

The court's decision is derived by construing the contract language to reach a reasonable interpretation. In a similar dispute on contract interpretation between a contractor and the Government, *Sturm v. United States,* 190 Ct.Cl. 691, 695, 421 F.2d 723, 727 (1970), this court maintained that:

5. Contract No. N62474–77–C–2515, a copy is in ASBCA record.

6. ASBCA found for the defendant on the issue of reasonable interpretation.

7. Paragraph 7.5 of the contract.

8. Contract No. N62474–77–C–2515.

*The test is whether the contractor, who realistically had to acquiesce in the government's proffered form, could reasonably construe it that way. [Citations omitted.]* This oft-repeated and much-applied rule serves important purposes. It puts the risk of ambiguity, lack of clarity, and absence of proper warning on the drafting party which could have forestalled the controversy; it pushes the drafters toward improving contracting forms; and it saves contractors from hidden traps not of their own making. [Emphasis supplied.]

See also, *Hedgeman-Harris & Co. v. United States,* 194 Ct.Cl. 574, 440 F.2d 1009 (1971); *Astro-Space Laboratories, Inc. v. United States,* 200 Ct.Cl. 282, 470 F.2d 1003 (1972).

■ The *Sturm* case avers that the applicable test is whether the contractor's interpretation is reasonable. Moreover, the contractor need not demonstrate that its interpretation is the only reasonable interpretation. *See George Bennett v. United States,* 178 Ct.Cl. 61, 371 F.2d 859 (1967); *Thanet Corp. v. United States,* 219 Ct.Cl. 75, 591 F.2d 629 (1979); *see also, Peter Kiewit & Sons Co. v. United States,* 109 Ct.Cl. 390 (1947).[9]

■ In the case before us, the court's decision as to what is a reasonable interpretation is achieved by reading the contract as a whole, so that all provisions are consistent. *Jamsar, Inc. v. United States,* 194 Ct.Cl. 819, 442 F.2d 930 (1971); *Southern Construction v. United States,* 176 Ct.Cl. 1339, 364 F.2d 439 (1966); *Hol-Gar Mfg. Corp. v. United States,* 169 Ct.Cl. 384, 351 F.2d 972 (1965). *See, e.g., United Pacific Insurance Co. v. United States,* 204 Ct.Cl. 686, 497 F.2d 1402 (1974); *Ball State University v. United States,* 203 Ct.Cl. 291, 488 F.2d 1014 (1973); *Blake Construction v. United States,* 202 Ct.Cl. 794 (1973).

■ Other factors which must be considered by the court are, the purpose of the contract, the repair of the housing unit, and the plain meaning of the words in the provision. In the court's judgment, plaintiff's interpretation of the provision relating to varnishing of "surfaces in bathrooms and kitchens where work has been performed" is a reasonable interpretation. We reach this result by reading paragraph 7.5 in the context of the whole contract and drawing sheets, reviewing ASBCA's findings, and considering the purpose of the contract which provides for the *repair and improvement* of the housing units that they be complete and ready for use.

First, insofar as paragraph 7.5 relates to the whole contract, the contract itself itemizes specific work to be done by the contractor on the kitchens and bathrooms. It is reasonable to construe paragraph 7.5 as requiring varnish only on the surfaces where work has been performed, since the contractual language generally indicates a distinction between areas where work was done and areas where no work was performed. Moreover, the contract and drawing sheets both identified which new and old areas were to be painted.

Secondly, in ASBCA's findings of fact, there is the relevant testimony of Mr. Danny Cates, the estimator and project manager for the plaintiff. Despite his testimony being relevant in deciding the issue of reasonable interpretation, ASBCA indicates no consideration of his testimony in its opinion. ASBCA summarized Mr. Cates' testimony as follows:

In arriving at his painting bid, Mr. Cates went to sheet A–11 for the bathroom items of work. There he was instructed to paint vanity cabinets. The color schedule did not include the finish to go on the vanity cabinets but the specification called for varnish. *As far as the kitchens are concerned, he went first to sheet A–4, item 14 which said to paint the kitchen in all units. He interpreted "paint" to mean anything with a color and thus only the walls and ceilings were to be painted. He found nothing on*

**9.** In the *Kiewit* case, the court held that if the Government specifications were *fairly* susceptible of a certain construction, and the contractor actually and reasonably so construed them, justice and equity require adoption of that construction.

*sheet A–4, as an item of work, requiring him to varnish the kitchen cabinets. Symbol 14 does not appear on any of the other drawings pointing to any of the cabinet work.* Detail BA–4 on sheet A–4, in the color schedule, did call for clear varnish, satin, to be used on kitchen cabinets and this symbol did not appear on the other sheets. Mr. Cates estimated the painting requirements at $98,600.

Appellant received bids from two potential subcontractors. Bob's Drywall bid $132,557 while Desert Decorating bid $74,484. A & K accepted the low bid of Desert Decorating. Appellant was not surprised that Desert Decorating had submitted a bid about $24,000 less than its own estimate because the painting was a labor intensive item; labor accounting for approximately 90% of the cost. Desert Decorating was a local firm which would have been spared the travel and subsistence expense which would have been incurred by appellant.

*In preparing his estimate, Mr. Cates did not include any money at all for varnishing anything in any of the units because he considered the varnishing to be such a minor touch-up item that he did not consider it at all significant from an estimating or cost stand-point [sic].*

Sheet A–4 contains a color schedule (which in pertinent part said ("Cabinets . . . clear varnish—satin")) but *Mr. Cates did not, and normally would not in bidding and reviewing drawings, go to the color schedule to determine the scope of work or an item of work required under the contract.*[10] [Emphasis supplied.]

Mr. Cates' testimony adduces how A & K interpreted the contract provision to formulate its bid and defines its understanding of the scope of work. Both these aspects support plaintiff's rationalization and proffered interpretation of paragraph 7.5 of the contract.

Finally, the purpose of the contract was for repair and improvement of the housing units. ASBCA placed emphasis on the phrase *complete and ready for use.* Repair of housing units and making them ready for use, as prescribed, simply does not imply that the units were to be like new, but rather to be useable. It is not the contractor's obligation to be clairvoyant and to second guess the Government when it is clear that the contract prescribes specific work that would improve the housing units.

Given the court's determination that plaintiff's interpretation of paragraph 7.5 is reasonable, the contract is therefore susceptible of more than one reasonable interpretation. *Blount Bro. Construction v. United States,* 171 Ct.Cl. 478, 346 F.2d 962 (1965); *B.D. Click Co., Inc. v. United States,* 222 Ct.Cl. 290, 614 F.2d 748 (1980). This finding warrants a conclusion that the contract language was, *a fortiori,* ambiguous.

■ The court's determination of the legal issue in this case, however, is confined to the issue of plaintiff's interpretation of the portion of the contract in question. Since the court is precluded from making any additional findings of fact, the next procedural step is for ASBCA to analyze the relevant language and provisions to determine if the ambiguity is patent, obvious, or glaring, or if it is subtle, hidden, and minor. *S.O.G. of Arkansas v. United States,* 212 Ct.Cl. 125, 546 F.2d 367 (1977). ASBCA did not reach this issue in its opinion, and further factual evidence is necessary to determine the nature of the ambiguity. This case, therefore, must be remanded to ASBCA for a finding on the issue of ambiguity.

■ The ramifications of this issue are: should ASBCA find the ambiguity was patent, obvious, or glaring prior to plaintiff's filing of its bid, then plaintiff had a duty to seek clarification from the contracting officer to remove any misinterpretations which might arise from the ambiguity. *S.O.G. of Arkansas v. United States,* 212 Ct.Cl. 125, 546 F.2d 367 (1977); *George Hyman Construction Co. v. United States,* 215 Ct.Cl. 70, 564 F.2d 939 (1977); *J.A. Jones Construction Co. v. United States,* 184 Ct.Cl. 1, 395

---

10. ASBCA 23436.

F.2d 783 (1968); *WPC Enterprises, Inc. v. United States,* 163 Ct.Cl. 1, 323 F.2d 874 (1963).

Upon a finding that plaintiff had a duty to seek clarification as to any ambiguity, and providing the contract contains the standard Government clause specifying such action, then plaintiff would be precluded from seeking an equitable adjustment for its interpretation.

On the other hand, if ASBCA finds the ambiguity is not patent, but rather subtle or hidden, then there was no duty imposed on the contractor, and the *contra proferentem* rule [11] is applied. The necessary result would then be a finding in favor of the contractor.

■ Moreover, the release signed by A & K's President, Mr. Dennis Keefe, and by the assistant resident officer in charge of construction at the housing project should not be a bar to the present claim by plaintiff. The release, dated March 15, 1979, was signed approximately one year after A & K indicated to the Government's contracting officer that the refinishing of the kitchen cabinets was *not* in the scope of its work. After the contracting officer's denial of A & K's claim on October 27, 1978, plaintiff timely filed its appeal.

The findings of ASBCA regarding the execution of the release contain testimony of Mr. Keefe and the Government's representative. Mr. Keefe's testimony does not indicate that the release was intended to extinguish the claim: "[h]e believes that the release was prepared at the time he and the Government came to an understanding on liquidated damages and that it was simply presented to him with other papers to sign." [12]

The testimony of the Government's representative consisted of such statements as: "[h]e could not remember if the Government had drafted the release for the contractor or whether the contractor had prepared the release on his own. He did testify that he did not discuss the instant claim with appellant in the context of waiving it by signing the release." [13] Neither testimony clearly substantiates defendant's premise that the release bars plaintiff's claim. Since there is no evidence of the intent on the part of either party that the release has such an effect, it does not.

■ In addition, there is substantial legal support for holding that the release does not bar plaintiff's claim. Where neither party intended, by mutual mistake, that the release cover a certain claim, the court will not view the release as a bar to the claim and the court may reform the release. *Nippon Hodo Co., Ltd. v. United States,* 142 Ct.Cl. 1, 160 F.Supp. 501 (1958). Even more meaningful is the fact that the parties continued to consider the claim after the execution of a release. Such conduct manifests an intent that the parties never construed the release as an abandonment of plaintiff's earlier claim. *Winn-Senter Constr. Co. v. United States,* 110 Ct.Cl. 34, 75 F.Supp. 255 (1948); *Adler Constr. Co. v. United States,* 191 Ct.Cl. 607, 423 F.2d 1362 (1970).

Finally, past administrative boards have held that the Government's consideration of the merits of a claim, following the execution of a release, indicates that the parties did *not* intend the release to extinguish the claim, and hence the release did not bar the contractor's earlier claim. *See Mecon Co.,* ASBCA 13620, 69–1 BCA ¶ 7786 (1969); *Haines, Lundberg & Waehler,* GSBCA 3124, 72–1 BCA ¶ 9460 (1972); *Harold Benson,* AGBCA 384, 75–1 BCA ¶ 11,085 (1975); *Addison Construction Co.,* IBCA 1064–3–75, 76–2 BCA ¶ 12,118 (1976).

Therefore, relying both on A & K's and the Government's consideration of the merits of the claim subsequent to execution of the release, the release cannot be construed as a bar to plaintiff's claim.

## CONCLUSION

For the reasons stated in the opinion, the court concludes that there is in this case a

---

11. The language of the contract will be construed against the drafter.

12. ASBCA 23436.

13. *Id.*

genuine issue as to a material fact (*i.e.,* whether the ambiguity in paragraph 7.5 of the contract is patent, obvious, or glaring, or whether the ambiguity is subtle, hidden or minor); that neither party is entitled to a judgment as a matter of law, and that the pending cross-motions for summary judgment should be, and are hereby denied. This case is remanded to ASBCA to determine the needed findings of facts consistent with this opinion, and to take any further action it believes necessary and proper consistent with its new findings of fact. Moreover, the proceedings in this court regarding this case are suspended pending ASBCA's decision.

The attorney of record for plaintiff shall advise the court, by letter to the judge (with a copy to opposing counsel), of the status of ASBCA's proceedings, at intervals of 90 days beginning with the date of this opinion.