824 F.2d 980
 Unpublished disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
TOM SHAW, INC., Plaintiff-Appellant,
v.
UNITED STATES, Defendant-Appellee.
 Appeal No. 87-1132.
 United States Court of Appeals, Federal Circuit.
 June 16, 1987.
 
 Before MARKEY, Circuit Judge, COWEN, Senior Circuit Judge, and BALDWIN, Senior Circuit Judge.
 COWEN, Senior Circuit Judge.
 
 DECISION
 
 1
 The decision of the Armed Services Board of Contract Appeals (Board) in ASBCA No. 27109, reported in 85-3 B.C.A. (CCH) p 18,434 (1985), denying a claim for increased costs allegedly incurred in performing a construction contract is affirmed.
 
 OPINION
 
 2
 Under 41 U.S.C. 609(b), "the decision of the agency board on any question of law shall not be final or conclusive." First at issue here is a question of contract interpretation--a question of law. Accordingly, a de novo review by this court is appropriate.
 
 
 3
 The legal issue presented in this case is the correct interpretation of p 2.3 of the contract specifications which provides:
 
 
 4
 The water used shall be clean, fresh, and free from oil, acid, alkali, organic matter, or other deleterious substances. The contractor may, at his option, use the water at the site; however, it will be his responsibility to ensure that the water meets the above standards.
 
 
 5
 Appellant, Tom Shaw, Inc. (Shaw), makes two contentions regarding the interpretation of this quoted section. First, Shaw asserts that the contract clause obligates the Government to "appoint" or provide a supply water at the site for use by the contractor. At oral argument, Shaw's counsel amplified the clause to mean that a supply of pressurized water sufficient to complete the job would be provided on the site where the work was to be performed. Secondly, Shaw maintains that Lake Michigan was not water "at the site" and was not suitable for use on the contract. Consequently, when the Government informed Shaw that he would not be able to use water piped through a 3/4 inch pipe from a shallow well on the site, Shaw maintains that the Government failed to provide him with water "at the site."
 
 
 6
 We reject Shaw's contentions on several grounds. First, when interpreting a contract, a court strives for the plain and unambiguous meaning of the contract terms. Thanet Corp. v. United States, 591 F.2d 629, 633 (Ct.Cl.1979); Timber Access Industries Co., Inc. v. United States, 553 F.2d 1250, 1256 (Ct.Cl.1977). Here, from the plain language of the contract, it unambiguously appears that the Government was under no obligation to supply water at the site for the performance of the contract; the contractor's use of water at the site was permissible and at his option. The contract contains no Government-Furnished-Property clause which would imply a warranty of fitness for the intended use from the Government's promise to provide a facility for that use. However, in this case, where the use of water on the site was permissive only, there was no representation by the Government as to the nature and quality of the water and no implied warranty that it would be suitable for the contractor's use. Chris Berg, Inc. v. United States, 389 F.2d 401, 405 (Ct.Cl.1968).
 
 
 7
 Second, the instructions to bidders urged them to visit the site and to take any steps necessary to ascertain the nature and location of the work, as well as the conditions which would affect the cost thereof. The bidders were also invited to make inquiries at the Sawyer Air Force Base located about 60 miles away. In addition, the general provisions of the contract stated:
 
 
 8
 The Contractor acknowledges that he has investigated and satisfied himself as to the conditions affecting the work, including but not restricted to those bearing upon transportation, disposal, handling and storage of materials, availability of labor, water, electric power, roads and uncertainties of weather, river stages, tides or similar physical conditions at the site, the confirmation and conditions of the ground, the character of equipment and facilities needed preliminary to and during prosecution of the work * * * [emphasis added].
 
 
 9
 The contractor did not investigate the site until after working hours, when he could not enter the fenced-in areas or talk with personnel who could have answered questions about the source of water. He made no effort to inquire from personnel at the Air Force Base. Substantial evidence supports the Board's finding that if he had visited the site accompanied by appropriate site personnel, he would have discovered that there was only a minimal supply of water on the site (the shallow well,) and that he would not have been permitted to use it. He would also have recognized that there was more than enough water available from Lake Michigan to perform the contract.
 
 
 10
 Third, the word "at" implies a broader geographic scope of location than Shaw's interpretation of the phrase "at the site." Shaw argues that the term means that water would be provided "on" the actual site where performance was to occur. However, "at the site" implies presence "in," "on," or "near," the slurry trench site. See Webster's Third New International Dictionary 136 (1976). The word "at" is not limited in meaning to being physically within a particular boundary or location. H.W. Fowler, A Dictionary of Modern English Usage 40 (2d ed. 1965). The Board, in its decision, noted this same distinction. See 85-3 B.C.A. at 92,576.
 
 
 11
 Lastly, at a pre-construction conference held after the bids were submitted, the contractor was told he could not use the small water supply on the site, but the use of Lake Michigan water was suggested. However, one Government representative questioned the suitability of the Lake Michigan water. The contractor contends that there was a consensus at the meeting that the lake water would not be used. Even if we agreed with this contention, it would be immaterial. Substantial evidence supports the Board's finding that the contractor made his own decision to truck water from a nearby river. There was no decision by the contracting officer or other authorized official prohibiting the contractor from using the lake water.