T.C. Memo. 1996-169

UNITED STATES TAX COURT

G. DASTGIR AND MARY A. QURESHI, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18099-93.                    Filed April 3, 1996.

<u>Warren Neal Nemiroff</u>, for petitioners.

<u>Stephen M. Friedberg</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, <u>Judge</u>: Respondent determined a $7,517 deficiency in
petitioners' 1984 Federal income tax, a $2,255 addition to tax for
valuation overstatement pursuant to section 6659, and additional
interest pursuant to section 6621(c).[1]  As an alternative to the

_____

[1]     Pursuant to the Tax Reform Act of 1986, Pub. L. 99-514,
                                        (continued...)

section 6659 addition to tax, respondent determined a $1,879 addition to tax for substantial understatement of tax pursuant to section 6661.

Following concessions by petitioners,[2] the issues for decision are: (1) Whether a closing agreement entered into by the parties on August 7, 1989, precludes petitioners from entitlement to a claimed depreciation deduction, investment tax credit, and loss from a program marketed by or on behalf of FoodSource, Inc. (hereinafter, this program is referred to as the FoodSource program) for 1984; and if not, (2) whether petitioners are entitled to the depreciation deduction, investment tax credit, and loss for 1984.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. The record before us is incomplete; nonetheless, we have attempted, as best we can, to ascertain the facts necessary to resolve the issues before us.[3]

---

[1](...continued)
sec. 1511(c)(1), 100 Stat. 2744, former sec. 6621(d) was redesignated as sec. 6621(c).

Except as otherwise indicated, all section references are to the Internal Revenue Code for the year under consideration.

[2]     Petitioners acknowledge that in the event we sustain respondent's deficiency determination, they are liable for both the sec. 6659 addition to tax and additional interest pursuant to sec. 6621(c).

[3]     For a better understanding of the FoodSource program,
                                                  (continued...)

Background

Petitioners G. Dastgir and Mary A. Qureshi, husband and wife, resided in Richmond, Virginia, at the time they filed their petition. Petitioners timely filed a joint Federal income tax return for 1984.

G. Dastgir Qureshi (petitioner) is a physician. He received his education and training in internal medicine and hematology oncology at the Medical College of Virginia and Columbia University. In 1974, he joined the faculty of the Medical College of Virginia. At all relevant times, petitioner was an assistant professor at the Medical College of Virginia.

In 1982, petitioners' income was approximately $35,000. During the year under consideration, 1984, petitioner received wages of $77,916.

FoodSource

FoodSource, Inc. (FoodSource)[4] is a California company that, during the period 1980-82, sold interests in controlled atmosphere refrigerated containers to various investors. The Budd Company of

---

[3](...continued)
see Noonan v. Commissioner, T.C. Memo. 1986-449, affd. without published opinion sub nom. Hillendahl v. Commissioner, 976 F.2d 737 (9th Cir. 1992), and Brand v. Commissioner, T.C. Memo. 1988-194.

[4] Beginning in May 1982, containers were sold by FoodSource Sales, Inc., a corporation wholly owned by David A. Dixon, who owned or controlled a majority of FoodSource's stock. For simplicity, both FoodSource and FoodSource Sales, Inc. are referred to herein as FoodSource.

Pennsylvania (Budd Co.) manufactured the containers. The refrigerated containers controlled the atmosphere for post-harvest preservation and transportation of perishable agricultural commodities. In 1982, FoodSource sold a container for $260,000.

Petitioner was introduced to the FoodSource program through Skip Stewart, who received a commission for each container sold. Among other things, Mr. Stewart informed petitioner of the potential tax advantages petitioner could expect to receive from an investment in the FoodSource program.

FoodSource supplied petitioner with information about its containers and program. Petitioner engaged a Richmond, Virginia, law firm to review the FoodSource documentation.

Petitioner did not investigate the reasonableness of the container's purchase price, the practicality of owning a fractional interest in a container, or the viability of the FoodSource program.

In 1982, petitioner purchased a one-half interest[5] in FoodSource container No. 506622. The price for petitioner's one-half interest was $130,000. Petitioner paid $26,000 in cash and gave a nonrecourse note for the balance. Subsequently, he exchanged a recourse note for the nonrecourse note.

Although petitioner expected the FoodSource container to generate rental income sufficient to pay for the cost of the

_____

[5] The remaining 50-percent interest was purchased by petitioners' neighbor, Tom Ream.

container as well as yield a profit, he understood that if the monthly earnings from the container rental were insufficient to meet monthly expenses, he would be required to pay the difference. Petitioner never saw or possessed the container.

Petitioner received periodic statements from FoodSource with respect to his interest in the container that purported to show rental revenues generated and expenses incurred. He eventually discovered that the revenue information contained in these statements was false.

Petitioner made three payments in 1984 to FoodSource totalling $2,655.95 for 1984. The purpose of these payments is unknown.

In 1990, petitioner was notified that the Budd Co. had possession of his container,[6] and that the Budd Co. was planning to sell it. The Budd Co. offered to sell the container to petitioner and Mr. Tom Ream (the other 50-percent interest holder) for $22,000. Neither petitioner nor Mr. Ream chose to accept this offer. Eventually, the container was sold at auction.

FoodSource filed for bankruptcy in 1984. In 1990, petitioner paid $25,000 on his recourse note to FoodSource's trustee in bankruptcy.

Closing Agreement

On their tax returns for 1979, 1980, 1982, and 1983, petitioners claimed credits, deductions, and losses with respect to

---

[6] The record is devoid of any evidence as to why the Budd Co. possessed the container at that time.

petitioner's investment and participation in the FoodSource program.[7] Respondent determined that the FoodSource program was an abusive tax shelter.

Petitioner was one of a large number of persons nationwide who had invested in the FoodSource program and claimed credits, deductions, and losses with respect thereto, which respondent disallowed. In order to resolve common issues, "test case petitioners" were selected among the persons whose credits, deductions, and losses had been disallowed by respondent and who had petitioned this Court for a redetermination of that disallowance. We rendered an opinion in the consolidated test cases entitled Noonan v. Commissioner, T.C. Memo. 1986-449, affd. without published opinion sub nom. Hillendahl v. Commissioner, 976 F.2d 737 (9th Cir. 1992).

Subsequent to our decisions in Noonan and the conclusion of the appeal thereof, on August 7, 1989, petitioners and respondent entered into a closing agreement (Form 906) regarding the credits, deductions, and losses petitioners claimed on their 1979, 1980, 1982, and 1983 tax returns with respect to petitioner's investment and participation in the FoodSource program. In pertinent part, the closing agreement states:

---

[7] Petitioners claimed refunds for carrybacks to their 1979 through 1981 tax years, based upon the depreciation deductions, interest expense, and investment tax credit as a result of petitioner's purchase of the container.

WHEREAS, a dispute has arisen between the parties as to the amount of the taxpayers' income, gains, losses, credits, and deductions related to investments and transactions with FoodSource, Inc.; and

WHEREAS, the parties wish to determine with finality the taxpayers' income, gains, losses [,] credits, and deductions for the taxable years [ending] December 31, 1979, December 31, 1980, December 31, 1982 and December 31, 1983 with respect to investments and transactions with FoodSource, Inc.

NOW IT IS HEREBY DETERMINED and AGREED for Federal Income Tax purposes that:

(1) No item of income, gain, loss, credit, and deduction from the taxpayers' transactions and investments with respect to FoodSource, Inc. is recognized with regard to container #506622, which was considered to be placed in service December 5, 1983.

(2) No depreciable basis shall be allowed for the container.

(3) No investment tax credit shall be allowed for the container.

(4) Any interest paid on the note financing the purchased container from FoodSource, Inc. would not be allowed as a deduction in any year.

(5) No maintenance, insurance, or other operating expenses would be allowed to the extent cash payments were paid for them, unless a portion of the container income reported was used to offset the expense.

(6) Overvaluation and negligence penalties are determined to be NONE and NONE for the year 1979, NONE and NONE for the year 1980, NONE and NONE for the year 1982, and $2,154.30 and NONE for the year 1983, respectively.

(7) Any future receipt by the taxpayers of damages or monies from FoodSource or its related entities and agents shall be included

as ordinary income of the taxpayers in the taxable year of receipt.

(8) Any future cash payments on notes financing the purchase of the container, which are either required by a court of law or by a settlement based on pending litigation with respect to the debt, will be allowed as an operating expense in the year paid. [Item (4) would then be superseded.]

Petitioners' 1984 Federal Income Tax Return

On Schedule C attached to petitioners' 1984 Federal income tax return, petitioners claimed a $27,300 depreciation deduction and reported a $27,300 net loss with respect to petitioner's investment in the FoodSource program. Also, on Form 3468, Computation of Investment Credit, attached to their 1984 return, petitioners claimed a $218 investment tax credit with respect to petitioner's investment in the FoodSource program. Respondent disallowed the claimed depreciation deduction, investment tax credit, and loss.

OPINION

Issue 1. Validity of the Closing Agreement for 1984

Initially, we must determine whether the closing agreement entered into by petitioners and respondent in August 1989 precludes petitioners from claiming the disputed deduction, credit, and loss for 1984. Petitioners contend that the closing agreement is applicable only to those years enumerated therein (namely, 1979, 1980, 1982, and 1983), and hence has no applicability to 1984. Respondent, on the other hand, contends that the closing agreement

is applicable to all matters concerning petitioner's investment and participation in the FoodSource program.

Section 7121(a) authorizes the Secretary of the Treasury or his delegate to enter into written closing agreements with respect to the tax liability of any person for any taxable period.  Such closing agreements are binding on the parties as to the matters agreed upon and may not be annulled, modified, set aside, or disregarded in any suit or proceeding unless there is a showing of fraud, malfeasance, or misrepresentation of a material fact.[8]  Sec. 7121(b); Rink v. Commissioner, 100 T.C. 319, 324 (1993), affd. 47 F.3d 168 (6th Cir. 1995); Zaentz v. Commissioner, 90 T.C. 753, 760 (1988).  A Form 906 is a final and conclusive agreement that is binding only as to matters agreed upon for the taxable period stated in the agreement.  Estate of Magarian v. Commissioner, 97 T.C. 1 (1991); Zaentz v. Commissioner, supra at 761-762; sec. 301.7121-1(d)(1), Proced. & Admin. Regs. Closing agreements are interpreted using ordinary contract law principles, which generally require that we look within the "four corners" of the agreement. Rink v. Commissioner, supra at 325.

The 1989 closing agreement is not a model of clarity.  The first introductory clause therein supports respondent's position that the closing agreement relates to a transaction (namely,

---

[8]    Neither party contends that fraud, malfeasance, or misrepresentation of a material fact exist in this case.

petitioner's investment in FoodSource), not specific years.  Also, the body of the closing agreement, specifically paragraphs (4), (5), (7), and (8), supports respondent's transaction position. However, the second introductory clause clearly supports petitioner's position; it refers to specific taxable years, namely 1979, 1980, 1982, and 1983.

Respondent's agents drafted the closing agreement.  It is a well-established principle of contract law that where an agreement contains an ambiguity, the ambiguity is resolved against the drafter of the agreement.  See Moore v. Chesapeake & O. Ry. Co., 649 F.2d 1004, 1012 (4th Cir. 1981); see also O'Neil v. Retirement Plan For Salaried Employees of RKO General, Inc., 37 F.3d 55, 61 (2d Cir. 1994); Milk 'N' More, Inc. v. Beavert, 963 F.2d 1342, 1344 (10th Cir. 1992); United States v. Coleman, 895 F.2d 501, 505 (8th Cir. 1990); Thanet Corp. v. United States, 219 Ct. Cl. 75, 591 F.2d 629, 633 (Ct. Cl. 1979).  This rules applies to the Internal Revenue Service as drafter of a stipulated agreement.  Clapp v. Commissioner, 875 F.2d 1396, 1399 (9th Cir. 1989).

Each tax year is a separate matter.  See Harrah's Club v. United States, 228 Ct. Cl. 650, 661 F.2d 203, 205 (1981). If the parties had intended 1984 to be included in their closing agreement, they could have done so. But they did not. Accordingly, we hold that the closing agreement per se does not preclude petitioners from entitlement to the claimed depreciation deduction, investment tax credit, and loss for 1984.

## Issue 2. 1984 Depreciation, Investment Tax Credit, and Loss Arising From FoodSource Investment

In order to establish petitioners' entitlement to an investment tax credit and depreciation deduction for 1984, petitioners must establish that: (1) The container was placed in service during the taxable year; (2) petitioner had a profit objective in acquiring and holding the property; and (3) petitioner had a particular basis in the property for tax purposes. In order to establish petitioners' 1984 FoodSource loss, petitioners must prove that it was a loss connected with a transaction entered into for profit.

### a. Placed in Service

Depreciation begins, and the investment tax credit is allowed, in the year in which a taxpayer places the qualifying property in service. Secs. 38(a), 46(a)(1) and (2), 46(c); secs. 1.46-3(a)(1), 1.167(a)-10(b), 1.167(a)-11(e)(1)(i), Income Tax Regs. Property is placed in service when it is "placed in a condition or state of readiness and availability for a specifically assigned function, whether in a trade or business, in the production of income, in a tax-exempt activity, or in a personal activity." Secs. 1.46-3(d)(1)(ii), 1.167(a)-11(e)(1)(i), Income Tax Regs.

Here, paragraph (1) of the closing agreement states that petitioner's container was placed in service on December 5, 1983. No evidence to the contrary was presented. Accordingly,

petitioners are not entitled to the claimed investment tax credit for 1984.

### b.  Profit Objective

In order to qualify for depreciation and other expense deductions with respect to the container, petitioners must demonstrate that the container was used in a trade or business or was held for the production of income.  Secs. 162, 167, 212.

To be entitled to a depreciation deduction, petitioner must prove that he had "an actual and honest objective of making a profit."  Dreicer v. Commissioner, 78 T.C. 642, 646 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). For this purpose, "profit" means economic profit, independent of tax savings. Surloff v. Commissioner, 81 T.C. 210, 233 (1983).  There is no requirement that a reasonable expectation of profit exist. Elliott v. Commissioner, 90 T.C. 960, 970 (1988), affd. without published opinion 899 F.2d 18 (9th Cir. 1990).  The determination of whether an activity is engaged in for profit is made by reference to objective standards, taking into account all the facts and circumstances of each case. Brannen v. Commissioner, 78 T.C. 471, 506 (1982), affd. 722 F.2d 695 (11th Cir. 1984). Greater weight is given to the objective facts than to the taxpayer's own statements of intent.  Sec. 1.183-2(b), Income Tax Regs.[9]  A taxpayer bears

---

[9]    Sec. 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of factors used in determining whether an activity is engaged in for profit.  The regulation lists nine
(continued...)

the burden to prove that he engaged in the activity with the objective of realizing an economic profit within the meaning of section 183. Surloff v. Commissioner, supra. If a taxpayer engages in an activity without a profit objective, deductions attributable to the activity are allowed only to the extent of the income derived from the activity. Sec. 183; Hager v. Commissioner, 76 T.C. 759, 781 (1981).

Petitioner argues that he had an honest and actual profit objective in purchasing the container. He also contends that his investment in the container was a business or an enterprise entered into for profit. Respondent, on the other hand, argues that petitioner's FoodSource investment was only a means of receiving tax benefits. We agree with respondent.

---

[9](...continued)
factors: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements indicating personal pleasure or recreation. No single factor, nor the existence of even a majority of the factors, is controlling. Abramson v. Commissioner, 86 T.C. 360, 371 (1986); Golanty v. Commissioner, 72 T.C. 411, 425-426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); see also Hendricks v. Commissioner, 32 F.3d 94, 98 (4th Cir. 1994), affd. T.C. Memo. 1993-396. In applying these factors, "courts have universally sought to ascertain the taxpayer's true intent." Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983).

Petitioner contends that he did everything he could "to guarantee this was [a] legitimate investment." Although petitioner did request a law firm to review literature from FoodSource, he did nothing else. He did not seek any independent verification of the information FoodSource provided. He did not inquire as to the actual cost of manufacturing the container, nor did he attempt to evaluate the container's fair market value. Based on the record before us, we are not persuaded that petitioner had an actual and honest profit objective with respect to his involvement in the FoodSource program. See Sutton v. Commissioner, 84 T.C. 210, 222-226 (1985), affd. per curiam 788 F.2d 695 (11th Cir. 1986)

We do not believe that petitioner invested $26,000, in a year when petitioners' income was approximately $35,000, for the purpose of generating an unknown and unsubstantiated amount of future income. Clearly, of considerable if not primary importance to petitioner in his participation in the FoodSource program was the immediate tax advantages he could achieve and the refunds that could be (and were) claimed on petitioners' amended returns for prior years.

Petitioner had no background or experience in the transportation of produce, nor did he exhibit any desire to become involved with it. He did not follow up on his investment to determine whether the container was completed or placed in an income-producing use. He never had control over the container.

None of the factors enunciated in section 1.183-2(b), Income Tax Regs., favors petitioners other than the absence of personal pleasure or recreation factor.  We conclude, and thus hold, that petitioner's investment in the FoodSource container was not made with an actual and honest profit objective.  Petitioners therefore are not entitled to the depreciation deduction for 1984.[10]

c.  Business Loss

Petitioners have the burden of establishing that petitioner sustained a loss in a transaction entered into for profit in 1984. Section 165 provides as follows:

SEC. 165. LOSSES.

(a) General Rule.--There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

*    *    *    *    *    *    *

(c) Limitation On Losses Of Individuals.-- In the case of an individual, the deduction under subsection (a) shall be limited to--

*    *    *    *    *    *    *

(2) losses incurred in any transaction entered into for profit, though not connected with a trade or business, * * *

Section 1.165-1(b), Income Tax Regs., provides: "To be allowable as a deduction under section 165(a), a loss must be evidenced by

---

[10]    In light of these holdings, we need not determine petitioner's adjusted basis for purposes of investment tax credit and depreciation.

closed and completed transactions, fixed by identifiable events, and * * * actually sustained during the taxable year."

Petitioners argue that they are entitled to a $27,300[11] loss pursuant to section 165 with respect to petitioner's investment in the FoodSource program. Respondent contends that petitioner did not enter into the FoodSource program primarily for profit and therefore petitioners are not entitled to the loss claimed. See Fox v. Commissioner, 82 T.C. 1001, 1021 (1984).

The only evidence petitioners presented in this regard was petitioner's blanket assertion that he possessed a profit motive in entering the FoodSource investment. We are not required to, and do not, accept this blanket self-serving assertion. Petitioner attempted in 1984 to recoup his lost investment from prior years. He has failed to show that he entered into the FoodSource program primarily for profit or that he sustained any business-related loss in 1984.

We conclude that petitioners are not entitled to a section 165 deduction in 1984 for the $27,300 invested in the FoodSource program.

To reflect the foregoing,

Decision will be

entered for respondent.

---

[11] Petitioner contends that $27,300 is the amount of his cash investment in the FoodSource program.