**NORTHWESTERN BAG CORPORATION, a Minnesota Corporation,**

v.

**The UNITED STATES.**

No. 61–79.

United States Court of Claims.

April 16, 1980.

---

**7.** See note 5, *supra*.

Melvin I. Orenstein, Minneapolis, Minn., atty. of record, for plaintiff.

Robert J. Hartman and Lindquist & Vennum, Minneapolis, Minn., of counsel.

Robert G. Giertz, Washington, D. C., with whom was Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant. Ransey G. Cole, Washington, D. C., of counsel.

Before SKELTON, Senior Judge, and KASHIWA and BENNETT, Judges.

## ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

KASHIWA, Judge:

This is an action seeking Wunderlich Act, 41 U.S.C. §§ 321, 322 (1976), review of a decision of the Corps of Engineers Board of Contract Appeals (the "Board"). For the reasons set out below, we uphold the Board's decision in its entirety.

Plaintiff is in the business of selling sandbags. On February 14, 1977, an employee of the Army Corps of Engineers (the

"Corps") telephoned Mr. Irwin Jacobs, Vice President of plaintiff, and placed an oral order for 10,000,000 sandbags. On February 15, 1977, a Mr. Cauble, Chief of the Procurement and Supply Division of the Saint Louis District of the Corps, telephoned Jacobs and informed him that the employee who contacted him on the previous day did not have the authority to order sandbags, that the oral order was not valid, and that plaintiff therefore did not have a contract to supply 10,000,000, sandbags. Upon being informed that plaintiff had, pursuant to this order, already shipped 2,600,000 of the bags, Cauble agreed to purchase this number of bags as a negotiated procurement. Cauble also told Jacobs that the other 7,400,000 sandbags (the balance of the bags the Corps would have received from plaintiff had the 10,000,000 bag order been valid) would be obtained by the Corps through an advertised procurement. Jacobs at that point asked Cauble what type of sandbag would be covered by this advertised procurement. Cauble had Jacobs describe the sandbags plaintiff was furnishing under the 2,600,000 bag contract. Jacobs described them as size 14½ by 33 inches, 10-ounce treated burlap bags with ties, 500 to a bale, approximate weight 200 pounds per bale. Cauble then informed Jacobs that this was the type of sandbag which would be obtained under the advertised procurement. In testifying before the Board, Cauble's account of this conversation included his telling Jacobs that in addition to the bags meeting this description, plaintiff would get a package in the mail with the complete and total description of the type of bag to be obtained.

On February 23, 1977, the Corps issued Invitation for Bid (IFB) No. DACW43–77–B–0032 as an advertised procurement for 7,400,000 sandbags. The bid sheet, contained within the IFB, required that these bags would have to comply with Military Specification MIL–B–12233D. In addition, the IFB also included, among other provisions, Article 23(a) of the Solicitation Instructions and Conditions, and General Provision No. 47.[1] These two provisions considered together imposed the requirement that only "new" sandbags could be furnished and defined "new" sandbags as those which are "not used, or reconditioned, and not of such age or so deteriorated as to impair their usefulness or safety."

Plaintiff was the low bidder under this IFB. However, prior to awarding the contract, Cauble and a number of other Corps employees visited Harper-Crawford Company in Charlotte, North Carolina. Harper-Crawford held the subcontract to supply to plaintiff the sandbags which plaintiff planned to sell to the Corps if awarded the 7,400,000 bag contract. Harper-Crawford produces new sandbags as well as reworking and resewing bags which were previously manufactured. After inspecting the reworked bags, Cauble asked an employee of Harper-Crawford if the reworked bags were what plaintiff planned on furnishing to the Corps if plaintiff was awarded the contract. This employee replied in the affirmative.

Subsequent to the trip to Harper-Crawford, Cauble contacted Jacobs and informed him that new bags were to be furnished under this contract and that reworked bags would not be accepted. Cauble also asked for written confirmation that plaintiff would furnish new sandbags if awarded the contract. Jacobs replied with the following telegram: "RE YOUR SOLICITATION # DACW43–77–B–0032 THIS WIRE CONFIRMS THAT THE SANDBAGS THAT

---

1.  Article 23(a) provided in relevant part as follows:

    "Articles, materials and equipment to be incorporated into the work under the contract shall be new and unused unless otherwise specified."

    General Provision No. 47 provided in relevant part as follows:

    "Except as to any supplies and components which the Specification or Schedule specifically provides need not be new, the Contractor represents that the supplies and components * * to be provided under this contract are new (not used, or reconditioned, and not of such age or so deteriorated as to impair their usefulness or safety)." Neither the Specification or Schedule specifically provided that used sandbags could be furnished.

WE BID PER THAT SOLICITATION NUMBER ARE NEW BURLAP BAGS." Plaintiff also submitted samples of sandbags which were tested and met the requirements of Military Specification MIL-B-12233D.

Subsequent to Jacobs sending the telegram and the testing of the samples, plaintiff was awarded the contract to sell 7,400,000 sandbags to the Corps. As sandbags were shipped, they were inspected upon receipt by the Corps. The Corps determined that the first shipment of bags was not "new" within the meaning of Article 23(a) and General Provision No. 47 and also failed to comply with MIL-B-12233D. This shipment was rejected by the Corps. Jacobs later inspected these rejected bags and agreed that they were not acceptable. Some of the bags in subsequent shipments also were not "new" and also failed to meet MIL-B-12233D.

On June 27, 1977, the Contracting Officer terminated the contract for default of plaintiff. The specific grounds were failure of the bags to meet MIL-B-12233D and to be "new." Plaintiff appealed to the Board the correctness of the termination for default.

Plaintiff made a number of arguments before the Board. Plaintiff contended a valid contract for 10,000,000 bags was created on February 14, 1977. Plaintiff also argued that the Corps employee who contacted plaintiff on February 14, 1977, did have the authority to purchase sandbags and that Cauble misrepresented the facts when he, on February 15, 1977, told Jacobs that such employee did not have procurement authority. With regard to the 7,400,000 bag contract, plaintiff admitted that its bags failed to meet MIL-B-12233D and were not "new" as defined in Article 23(a) and General Provision No. 47. However, plaintiff argued the Corps was estopped from demanding compliance with MIL-B-12233D and had waived any objections to the bags' failure to be "new." Plaintiff, therefore, contended that it was not in default under the contract, and the termination, since not for plaintiff's default, was really for the convenience of the Corps.

The Board decided (1) there was never a valid 10,000,000 bag contract, (2) Cauble had not misrepresented the facts to plaintiff and (3) concerning the 7,400,000 bag contract, the Corps was not estopped from demanding compliance with MIL-B-12233D and had not waived any objections to the bags not being "new." The Board, therefore, held the termination for default was proper.

In its complaint filed with this court, plaintiff challenged the finality and conclusiveness of the entire Board decision. Plaintiff claimed (1) there was a valid 10,000,000 bag contract which had been breached by the Corps, (2) Cauble had on February 15, 1977, misrepresented the true facts so as to induce plaintiff to give up its rights under the 10,000,000 bag contract and enter into the 7,400,000 bag contract and (3) since the Corps was estopped from demanding compliance with MIL-B-12233D and had waived its right to object to the failure of the bags to be "new," the termination of the 7,400,000 bag contract was for the convenience of the Corps.

In its motion for summary judgment, plaintiff only asked us to hold the 10,000,000 bag order to be a valid contract and the termination of the 7,400,000 bag contract to be for the default of the Corps. At oral argument, plaintiff conceded it was suing solely on the 7,400,000 bag contract, asserting that the termination was for the convenience of the Corps. Plaintiff also admitted the sandbags shipped were not "new" within the meaning of Article 23(a) and General Provision No. 47 and failed to meet the requirements of MIL-B-12233D.

■ Defendant has moved for summary judgment, asking us to hold the 10,000,000 bag order did not give rise to a valid contract and that the 7,400,000 bag contract was properly terminated for the default of plaintiff. Plaintiff's concession that it is not suing under the 10,000,000 bag order nor for Cauble's alleged misrepresentation means it no longer challenges the correctness of the Board's decision that the 10,000,000 bag order was not a valid contract and

that Cauble did not misrepresent the true facts. This being so, we hold the Board's decision to this extent is final and conclusive. We, therefore, grant defendant's motion for summary judgment on the issue of validity of the alleged contract arising out of the 10,000,000 bag order and deny plaintiff's motion on this issue. The Board's decision on these two points also being dispositive of the first two claims in plaintiff's petition, the petition to this extent is dismissed.[2]

The only issue remaining is, therefore, whether the termination of the 7,400,000 bag contract was properly for default of plaintiff. There being no question that the bags shipped were not "new" and did not comply with MIL–B–12233D, and that this would justify a termination for default, the termination for default was proper unless the Corps could not for some reason insist upon compliance with these contract requirements. Plaintiff argued before the Board, and continues to argue, that the Corps had waived its objection to the bags not being "new" and is estopped from demanding compliance with MIL–B–12233D. The Board having held there was no waiver or estoppel, if its decision is final and conclusive under 41 U.S.C. § 321, then the termination was for default of plaintiff.

■ Plaintiff's estoppel argument rests entirely on Cauble informing Jacobs on February 15, 1977, that the bags to be procured under the IFB would be the same type of bag which plaintiff was supplying under its 2,600,000 bag contract. Plaintiff interprets this as Cauble's stating that this was the full and complete description of the bags to be procured. Since MIL–B–12233D broadens this description, plaintiff insists the Corps is estopped from demanding compliance with MIL–B–12233D.

For Cauble's February 15, 1977, statement to estop the Corps, there are five requirements, all of which must have been met: (1) Cauble must have been acting within the scope of his authority when he told Jacobs the bags to be procured would be the same as those supplied under the 2,600,000 bag order, (2) at the time Cauble told this to Jacobs, Cauble must have already intended to include MIL–B–12233D in the IFB, (3) Cauble must have intended that Jacobs would interpret his statement as defining the full and complete description of the bags to be procured *or* Jacobs had a reasonable right to believe this is what Cauble intended, (4) Jacobs must at that time have been unaware that Cauble intended to include MIL–B–12233D in the IFB and (5) plaintiff must have relied on Cauble's February 15 statement to its injury. *See Emeco Industries, Inc. v. United States,* 202 Ct.Cl. 1006, 485 F.2d 652 (1973).

On consideration of the Board decision and the administrative record, we find there was substantial evidence supporting a Board finding that the third condition above was not met. Cauble testified before the Board that he not only told Jacobs that the bags to be procured under the IFB would be the same as those furnished under the 2,600,000 bag contract, he also told Jacobs that plaintiff would get a package in the mail "with the complete and total description of what we want." In light of this testimony, the Board could reasonably have found not only that Cauble did not intend for Jacobs to interpret the description of the bags furnished under the 2,600,000 bag contract to be the full and complete description of the bags to be procured under the IFB but also that Jacobs did not have a reasonable right to believe that Cauble intended this to be a full and complete description.[3] Since, as a matter of law, if any

**2.** Even were we to not hold the Board decision final and conclusive, plaintiff's misrepresentation claim would still be dismissed. This claim sounds in tort and is, therefore, not within the subject matter jurisdiction granted to this court under 28 U.S.C. § 1491 (1976).

**3.** Jacobs' own conduct also demonstrated that plaintiff did not believe the description Cauble

gave him on February 15, 1977, to be the full and complete description of the bags to be procured under the IFB. Prior to being awarded the contract, plaintiff furnished sample bags which did comply with MIL–B–12233D. Also, after inspecting the first shipment of bags, bags which failed to meet this requirement, Jacobs agreed the bags were not acceptable. The Board could have reasonably found that Jacobs

one of these five requirements is not met, estoppel cannot be invoked, we find the Board decision that the Corps was not estopped is correct as a matter of law and, therefore, is final and conclusive.

■ Plaintiff claims that by virtue of Cauble's inspection of the Harper-Crawford facility prior to award of the 7,400,000 bag contract, the Corps waived its objections to the bags not being "new" within the meaning of Article 23(a) and General Provision No. 47. In plaintiff's view, since Cauble saw the reconditioned bags and was informed that these were the bags plaintiff intended to furnish under this contract, by awarding the contract to plaintiff anyway Cauble waived the right of the Corps to object to the bags not being "new." We, however, feel there was substantial evidence supporting the Board's decision of no waiver and that this decision was correct as a matter of law.

After the trip to the Harper-Crawford facility, and prior to awarding the contract to plaintiff, Cauble informed Jacobs that only new bags would be acceptable under IFB DACW43–77–B–0032 and requested confirmation that plaintiff would furnish new sandbags if awarded the contract. Jacobs replied by telegram that its bid under this IFB was for the furnishing of new bags. General Provision No. 47, which was included in this IFB, defined "new" for purposes of this IFB as being sandbags which were "not used, or reconditioned, and not of such age or so deteriorated as to impair their usefulness or safety."

Since Cauble's inquiry and Jacobs' response were both with regard to this IFB, the Board could have reasonably found that both parties gave to the word "new" this General Provision No. 47 definition. This means it could have reasonably found that

furnished samples which met this requirement and agreed that the first shipment was unac-

Cauble and Jacobs both understood that notwithstanding Cauble's inspection of the Harper-Crawford facility and his seeing the bags being reconditioned there, if awarded the contract plaintiff would be furnishing "new" bags, as so defined. In view of such a finding, it would have been entirely reasonable for the Board to decide that Cauble's trip to North Carolina did not result in the waiver by the Corps of its objections to the failure of the bags furnished by plaintiff to be "new." We, therefore, find the Board's decision that the Corps did not waive its objections to be final and conclusive.

■ Our attaching finality to the Board's decisions of no waiver and no estoppel means that its holding the termination of the 7,400,000 bag contract to be for the default of plaintiff is correct as a matter of law and is, therefore, final and conclusive. Defendant's motion for summary judgment on this issue is thus granted, and plaintiff's motion is denied. The decision that the termination was for plaintiff's default being dispositive of the third count in plaintiff's petition, this count is dismissed.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment on both issues is granted, plaintiff's motion for summary judgment on both issues is denied, and plaintiff's petition is dismissed in its entirety.

ceptable only because he believed MIL–B–12233D was a part of the contract description.