892 F.2d 1051
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
GREG STOUT LOGGING, Appellant,
v.
The UNITED STATES, Appellee.
 No. 89-1373.
 United States Court of Appeals, Federal Circuit.
 Dec. 26, 1989.
 
 Before NIES, NEWMAN, Circuit Judges and EDWARD S. SMITH, Senior Circuit Judge.
 EDWARD S. SMITH, Senior Circuit Judge.
 
 
 1
 In this government contract case, appellant Greg Stout Logging seeks review of a decision of the Department of Agriculture Board of Contract Appeals (BCA). The BCA decision upheld the Contracting Officer's determination which: (1) denied appellant's claims for damages due to the government's alleged breach of an express warranty under Uniform Commercial Code § 2-313 and (2) granted the government's demand for damages resulting from appellant's abandonment of performance. We affirm.
 
 Background
 
 2
 The facts pertinent to this appeal are as follows: The Forest Service, United States Department of Agriculture, awarded Contract No. 063810 to Greg Stout Logging (Appellant) on February 22, 1985. The contract called for the sale of certain previously cut timber stacked at specific locations in Oregon's Fremont National Forest.
 
 
 3
 The Prospectus described the timber as sixty year old "Lodgepole Pine and Other Species Fuelwood". Contract prices in Forest Service sawlog timber sales are normally calculated based on an estimated volume in board feet, but the present sale was set up on a per piece basis since the ungraded material was intended for use as fuelwood. Page 5 of the Prospectus provided in pertinent part:
 
 12. Other
 
 4
 A. This sale is sold on a piece basis where no reference to volume is implied. Prospective purchasers are encouraged to review the sale to determine for themselves their recovery potential ...
 
 
 5
 B. The decked material is mainly dead and should be considered deteriorating or a salvage opportunity.[1]
 
 
 6
 Prior to the bidding, Stout visited the sale area by snowmobile to determine the approximate size of the timber, but a heavy covering of snow prevented an accurate evaluation of the length and diameter of the logs. However, Stout did view the remaining standing timber in the area and formed an estimate of the length of the stacked sale material.
 
 
 7
 Later Stout visited the Forest Service offices to obtain additional information about the dimensions of the sale material. On a table in the office, the Forest Service exhibited several photographs of the subject logs which had originally been taken for internal agency purposes apart from the sale. None of the photographs, which depicted only 6 out of the 87 lumber stacks offered for sale, showed the full length of the timber. It is clear that Forest Service personnel offered the pictures to assist the buyers in tendering accurate bids, but the circumstances surrounding this offering are in dispute. Appellant insists the Forest Service employees indicated the displayed photographs were representative of all the timber stacks offered for sale. On the other hand, the testimony of the Forest Service personnel gives the impression that the photos were offered merely as representative of the type of timber being sold. For example, one employee testified that he told Stout, "Here are some pictures that some of the material looks like."[2]
 
 
 8
 Stout was allowed to retain one photograph. This picture was taken directly to a sawmill where appellant proposed to sell the timber from the sale. After receiving the mill operator's approval of his plan to utilize the pieces as sawlog material, appellant submitted a bid and was awarded the contract. A portion of the timber was subsequently processed at the mill, but the mill owner refused to accept additional wood shipments because the excess limbs in the substandard quality logs made the production of planed boards impossible. Appellant then abandoned the sale and left the remaining stacks of timber in their original locations on the forest floor.
 
 
 9
 In April 1986, appellant submitted a claim for $23,081 to the Contracting Office (CO)[3] based upon the theory that the photographs misrepresented the quality and length of the timber being sold. Appellant claimed that the Forest Service photographs offered at the time of the sale constituted an express warranty under U.C.C. § 2-313 as to the length of the timber. Since the logs were not as long as appellant expected, appellant asserted that the Forest Service's alleged breach justified the abandonment of the contract and resulting damage claim. The CO denied the claim and resold the abandoned timber at a loss pursuant to specific provisions of the contract, assessing appellant $24,903 in damages resulting from his abandonment of performance. Appellant appealed both the denial of the claim[4] and the damage assessment[5] to the Department of Agriculture Board of Contract Appeals.[6]
 
 
 10
 Stout testified before the BCA that Forest Service personnel told him the displayed photographs were representative of all the timber in the sale area. However, Stout could not identify the actual individual making the alleged misrepresentation. The BCA found appellant's testimony unpersuasive and held that appellant failed to prove the alleged misrepresentations by a preponderance of the evidence.[7] The BCA found insufficient evidence of appellant's justifiable reliance on such alleged misrepresentations, particularly in light of the Prospectus' description of the sale, to hold that a warranty within the meaning of U.C.C. § 2-313 was created as to the length of the logs.[8] The BCA recognized in conclusion that subordinate Forest Service personnel, not the CO, made the representations complained of by appellant. Accordingly, even assuming the existence of the asserted express warranty, the BCA determined appellant had failed to show the Forest Service personnel making the alleged misrepresentations had the requisite authority to bind the Government.[9] Appellant appeals the express warranty determination in the BCA decision to this court pursuant to 41 U.S.C. § 607(g)(1)(A).
 
 Issues
 
 11
 1. Did the Forest Service personnel making the alleged representations relied on by appellant have the requisite authority to bind the government?
 
 
 12
 2. Did the circumstances surrounding the offering of the photographs give rise to an express warranty as to timber length?
 
 Scope of Review
 
 13
 The Contract Disputes Act[10] governs this appeal, so the scope of review is determined under 41 U.S.C. § 609(b).[11] The BCA's decision on any question of fact is final and conclusive, and will not be set aside unless shown to be fraudulent, arbitrary, capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.[12] The BCA decision on any question of law, however, is freely reviewable by this court.[13]
 
 Express Authority
 
 14
 It is well settled that the United States is not bound by the unauthorized acts of its agents.[14] If the government is to be bound, the Forest Service official making the alleged misrepresentations under scrutiny here must have been acting within the scope of his authority at the time the photographs were offered to appellant.[15] Accordingly, the law requires that Stout prove the Forest Service official whose representations he relied upon had the authority to bind the government.[16]
 
 
 15
 The BCA found below that Stout could not identify the specific Forest Service employee making the alleged misrepresentations by name or title. It is clear that the CO did not communicate with appellant concerning the photographs. When Stout visited the Forest Service office, the CO was busy with other duties, so appellant's questions were referred to other Forest Service personnel on hand to assist with the sale. The record below is less than helpful in determining exactly what information these personnel gave appellant, but appellant stated: "... there was [sic] a lot of people in there. At the time of the sale, there was [sic] three or four Forest Service people in there and there was [sic] two or three different loggers like myself; and everybody was asking questions and everybody was eavesdropping on everybody else's conversations. So I don't know who asked or said what. I just remember I asked some questions; and I was trying to draw a conclusion as to what we were buying."[17] After considering all circumstances surrounding the sale, we agree with the BCA's conclusion that appellant failed to prove that the employee whose representations he relied upon had the proper authority to bind the government.
 
 Express Warranty
 
 16
 Appellant, relying on Everett Plywood and Door Corp. v. United States,[18] alleges that the Forest Service photographs displayed at the sale created an express warranty under the provisions of U.C.C. § 2-313.[19] Appellant specifically asserts that the photographs became the "basis of the bargain" between the parties, so under § 2-313 the issue of justifiable reliance on the photographs (the focal point of the BCA decision below) becomes irrelevant. Comment 3 to § 2-313, in an attempt to clarify the status of the reliance requirement, states by way of explanation:
 
 
 17
 "In actual practice, affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of the goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement. Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof. The issue normally is one of fact."
 
 
 18
 The courts appear evenly divided on the question whether the buyer's reliance on the seller's affirmations is required for an express warranty to arise.[20] However, the Court of Claims has held on numerous occasions that justifiable reliance must be affirmatively shown before an express warranty arises. In Everett, although § 2-313 was applied to a Forest Service timber contract, reliance was cited as an essential prerequisite to the creation of an express warranty: "... material representations in the government's plans and specifications, upon which the contractor justifiably relies, ... amount to a warranty, and the contractor is entitled to recover damages caused by the incorrectness of such representations, irrespective of the good faith with which they were made."[21] A later Forest Service timber sale case, Caffall Brothers Forest Products, Inc. v. United States,[22] retained the reliance requirement: "In essence, a warranty is an assurance by one party to an agreement of the existence of fact upon which the other party may rely; ..."[23] We conclude that plaintiff must prove reliance before an express warranty will be presumed to exist. Under the U.C.C., the reliance requirement is retained within the basis of the bargain test.
 
 
 19
 The BCA held below that appellant presented insufficient evidence of justifiable reliance on the Forest Service photographs to support a conclusion that an express warranty was created as to the length of the logs. Appellant's expectation of so comprehensive a liability on the part of the government on the basis of such uncomprehensive and unattributable evidence, lacks reality. As both the contractual and ipso facto express warranties turn on what was communicated and whether that communication was a part of the basis of the bargain, questions arising concerning creation of warranties under § 2-313 are typically questions of fact.[24] As noted above, the decision of the BCA on factual questions will be upheld unless unsupported by substantial evidence.
 
 
 20
 The Forest Service issued a Prospectus that fully described the timber offered in the sale as mere salvage lumber usable only as fuelwood. The pieces were sold on a per piece basis; no information was included in the Prospectus concerning log length as is the usual practice in sawlog sales.
 
 
 21
 Stout, an experienced logger, visited the sale site and viewed the similar standing timber in the area; from this viewing, he formulated an impression as to the probable length of the logs. This initial impression was neither confirmed nor denied by the photographs, none of which depicted the full length of the logs. It is well known in the logging industry that smaller logs gravitate toward the center of machine stacked piles, so photographs are of limited usefulness in determining average log length. Stout undoubtedly knew or should have known that many shorter logs were concealed within the machine stacked timber. The Prospectus and Stout's own appraisal of the standing timber were used by appellant to form an opinion concerning the length and quality of the logs offered for sale.
 
 
 22
 The BCA concluded: (1) the Forest Service photographs were not the basis of the bargain between the parties; and (2) appellant's purported reliance thereon to determine the length of the logs was not justifiable considering the totality of circumstances surrounding the sale. Exactly what the Forest Service personnel told appellant concerning the photographs is unclear; the BCA found appellant's vague and unsubstantiated allegations of misrepresentations insufficient to establish the creation of an express warranty within the meaning of U.C.C. § 2-313. We cannot say, after careful consideration of the relevant facts of this case, that the BCA's conclusions are unsupported by substantial evidence. As the BCA noted below, appellant (and the sawmill operator) were looking for bargain sawlog material in a sale of fuelwood.
 
 Conclusion
 
 23
 Appellant has failed to present any evidence showing that the Forest Service personnel were authorized to represent, on behalf of the government, that the photographs on which he allegedly relied accurately depicted the timber offered for sale. Appellant's reliance on the photographs to the exclusion of the Prospectus was simply not justifiable, so no express warranty was created within the meaning of U.C.C. § 2-313 as to the length of the logs. No express warranty was in effect, therefore appellant was not justified in abandoning performance of the contract. The BCA's decision denying appellant's warranty claim and awarding damages to the government based on appellant's breach is AFFIRMED.
 
 
 
 [1]
 89-1 BCA (CCH) p 21,571 at 108,635
 
 
 [2]
 89-1 BCA (CCH) p 21,571 at 108,636
 
 
 [3]
 Pursuant to 41 U.S.C. § 605(a) (1982)
 
 
 [4]
 AGBCA Appeal No. 87-266-1
 
 
 [5]
 AGBCA Appeal No. 87-267-1
 
 
 [6]
 Pursuant to 41 U.S.C. § 606 (1982)
 
 
 [7]
 89-1 BCA (CCH) p 21,571 at 108,639
 
 
 [8]
 89-1 BCA (CCH) p 21,571 at 108,639
 
 
 [9]
 Id
 
 
 [10]
 41 U.S.C. §§ 601-613 (1982)
 
 
 [11]
 United States v. General Electric Corp., 727 F.2d 1567, 1572 (Fed.Cir.1984)
 
 
 [12]
 41 U.S.C. § 609(b) (1982), American Elec. Laboratories, Inc. v. United States, 774 F.2d 1110, 1112 (Fed.Cir.1985)
 
 
 [13]
 Fort Vancouver Plywood Co. v. United States, 860 F.2d 409, 411 (Fed.Cir.1988); American Elec. Laboratories, 774 F.2d at 1112
 
 
 [14]
 See, e.g. Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947); Urban Data Sys., Inc. v. United States, 699 F.2d 1147, 1153 (Fed.Cir.1983); Hazeltine Corp. v. United States, 10 Cl.Ct. 417, 440, 230 U.S.P.Q. 721, 738 (1986)
 
 
 [15]
 See Northwestern Bag Corp. v. United States, 223 Ct.Cl. 333, 339, 619 F.2d 896, 900 (1980)
 
 
 [16]
 Eg., Hazeltine, 10 Cl.Ct. at 440, 230 U.S.P.Q. at 738; Thanet Corp. v. United States, 219 Ct.Cl. 75, 85, 591 F.2d 629, 635 (1979)
 
 
 [17]
 89-1 BCA (CCH) p 21,571 at 108,636
 
 
 [18]
 190 Ct.Cl. 80, 419 F.2d 425 (1969)
 
 
 [19]
 The 1978 Official Text of U.C.C. § 2-313 provides as follows:
 2-313. EXPRESS WARRANTIES BY AFFIRMATION, PROMISE, DESCRIPTION, SAMPLE
 (1) Express warranties by the seller are created as follows:
 (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
 (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
 (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods will conform to the sample or model.
 (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.
 
 
 [20]
 See J. White & R. Summers, Uniform Commercial Code 398-404 (3rd ed. 1988)
 
 
 [21]
 190 Ct.Cl. at 92, 419 F.2d at 431 (emphasis added)
 
 
 [22]
 230 Ct.Cl. 517, 678 F.2d 1071 (1982)
 
 
 [23]
 Caffall, 230 Ct.Cl. at 526, 678 F.2d at 1076 (citing Dale Construction Co. v. United States, 168 Ct.Cl. 692, 699 (1964)) (emphasis added)
 
 
 [24]
 U.C.C. § 2-313 comment 3 (1978), See also 3 R. Anderson, Uniform Commercial Code § 2-313:121 (1983)