**S.J. HAZAN, Col. USAR, Ret.**

v.

**The UNITED STATES.**

**No. 302–86C.**

United States Claims Court.

Aug. 27, 1987.

S.J. Hazan, pro se.

John S. Groat, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant; Lt. Col. William C. Kirk, and Maj. William L. Allinder, Office of the Judge Advocate Gen., Dept. of the Army, of counsel.

## OPINION

YOCK, Judge.

The plaintiff seeks military back pay, correction of his military records to reflect retirement for medical disability, and other relief. For the reasons discussed herein, the defendant's Motion for Summary Judgment is granted and the plaintiff's complaint is to be dismissed. Because the Court finds that a settlement release executed by the plaintiff fully satisfied the present claim, the plaintiff's Cross-Motion for Summary Judgment and the defendant's Motion to Stay Consideration of Plaintiff's Cross-Motion for Summary Judgment are denied as moot.

### Facts

The plaintiff, Col. S.J. Hazan, is a medical doctor and a retired officer in the United States Army Reserve. Colonel Hazan served on active duty in Bamberg, Germany, from June 1976 through July 1978 as an Army physician. While on this tour of duty, the plaintiff suffered several medical problems (including cardiac illness and spinal problems) which resulted in his being placed on limited medical duty with restricted activities. At his request, he was honorably discharged from active duty service in Germany on July 14, 1978 and transferred to the Army Reserve. Effective November 17, 1978, the plaintiff was voluntarily assigned to an Army Reserve unit in pay status located at the 6253d Army Hospital, Hamilton Field, California. On August 18, 1979, the Reserve Components Personnel and Administrative Center (RCPAC) of the Department of the Army advised the plaintiff by letter that he did not meet the standards for retention in the Army Reserve and therefore must elect to be discharged or to be transferred to the nonpay Retired Reserve. The plaintiff elected to be retired, and on December 28, 1979, he was discharged from his pay unit position and transferred to the Retired Reserve.

On May 9, 1980, the plaintiff submitted his initial application for correction of his military records to the Army Board for the Correction of Military Records (hereafter the Board or ABCMR). In that application, the plaintiff sought to have his 1978 active duty discharge corrected and changed to indicate that he was given a medical disability discharge. This application was initially denied by the Board on March 25, 1981 due to insufficient evidence. There followed, however, a series of reconsideration decisions by the Board (prompted by the plaintiff's requests) terminating in the final Board decision dated July 10, 1985.

Prior to the Board's final decision being issued, however, the Army (RCPAC) on September 10, 1982 revoked its retirement orders issued to the plaintiff on December 28, 1979 and reinstated him to active reserve status in the Army Reserve. The Army cited administrative error. Thereafter, the plaintiff amended his claim before the Board to include back pay for the reserve pay and allowances lost from December 28, 1979 forward.

As indicated above, on July 10, 1985, the Board issued its final opinion in the plaintiff's case. In summary, the Board held that the plaintiff was not entitled to medical disability retirement from his active duty discharge on July 14, 1978, but that he was entitled to have all pay and benefits he would have received as a paid Army reservist from December 28, 1979 through September 10, 1982, since the Army had erroneously transferred him to the Retired Reserve as of that date. The plaintiff was not entitled to any Reserve pay and benefits from September 10, 1982 forward, how-

ever, because he had failed to produce sufficient evidence to justify that relief. The plaintiff was again placed in retired status on September 28, 1984. The Board's conclusions and recommendations in pertinent part state:

CONCLUSIONS:

1. After reviewing all of the evidence of record, the prior reviews and the applicant's current contentions, the Board *reaffirms its prior decisions in denying the applicant's requests to show that he was separated by reason of physical disability.*

2. Further, taking into consideration the current standards for fitness, which requires [sic] "world-wide deployability" under field conditions, *the applicant is not fit for return to active duty.* In addition, although qualified for retention and/or separation at the time of his release from active duty on 14 July 1978, his medical disqualification for retention as an active member of the USAR appears proper.

3. Notwithstanding the foregoing, the applicant was erroneously transferred to the Retired Reserve on 28 December 1978[1] and remained in such status until 10 September 1982, when he was restored to the active Reserve.

4. While the applicant has been credited with sufficient points to make RYE 12 May 1979 and 12 May 1980 as qualifying years, he has only been credited with membership points after RYE 12 May 1980.

5. Accordingly, it appears that the applicant also should be entitled to have RYE 12 May 1981 and RYE 12 May 1982 counted as qualifying years and credited with at least 50 retirement points for these two years.

6. Had it not been for the erroneous transfer to the Retired Reserve on 28 December 1978, it is reasonable to presume that the applicant would have continued to participate in the USAR program during the period 28 December 1978 until his reinstatement on 10 September 1982.

7. In view of the foregoing, the applicant is entitled to all benefits that would have accrued as a result of his participation in the scheduled drills, annual training and active duty for training with his assigned USAR unit from 28 December 1978 through his reinstatement 10 September 1982.

8. *Since the applicant has submitted insufficient evidence to indicate that the Department failed to provide him with the opportunity to earn qualifying points or to participate in the USAR after his reinstatement on 10 September 1982, he is not entitled to have his records corrected to show satisfactory participation after that date.*

RECOMMENDATION:

1. That all of the Department of the Army records of SOL J. HAZAN be corrected to show that he is entitled, in the grade of 06, to all benefits, to include retirement points, that he would have accrued from participating in all scheduled drills, annual active duty for training and/or annual training of his assigned Reserve unit, Headquarters, 6253d Army Hospital, Hamilton Field, California from 28 December 1978 through 10 September 1982.

2. That so much of the application which is in excess of the foregoing be denied.

ABCMR Proceedings, AC 82–14394D (July 10, 1985) (emphasis added). The Board's decision was approved by the Deputy Assistant Secretary of the Army on August 5, 1985.

Plaintiff, in the instant case, seeks the identical relief denied to him by the Board. Specifically, Colonel Hazan seeks a declaration that his discharge from active duty was invalid, an order from this Court requiring evaluation of the plaintiff for medical disability retirement, or his restoration to active duty. Additionally (and apparently in the alternative), the plaintiff seeks all

---

1. This date is apparently incorrect. Colonel Hazan was transferred to the Retired Reserve in 1979.

active reserve duty pay for the period September 10, 1982 to the present.

Prior to filing his case in this Court, the plaintiff executed USAFAC (United States Army Finance and Accounting Center) Form 34–36FL. The first page of this form contained the following language:

1. The Secretary of the Army has approved the request for correction of your military records under the provisions of 10 U.S.C. 1552, and the amount found payable to you is shown on the attached certificate.

2. If your records indicate that the amount is not correct, you are requested to advise the U.S. Army Finance and Accounting Center wherein the amount is incorrect, with copies of your records, and to include a full statement explaining the alleged discrepancy.

3. If you agree that the amount as shown on the enclosed claim certificate is correct, request you take the following steps:

    a. Do not alter the certificate in any manner.

    b. Check (X) the appropriate box.

    c. Sign, address and date the original and one copy.

    d. Return both copies in the enclosed self-addressed envelope.

4. On receipt of the signed certificate, in duplicate, your claim will be promptly processed.

The second page showed the computation of the settlement amount due under 10 U.S.C. § 1552. Colonel Hazan was due a net amount of some $15,430. Below the computational section was a section entitled "Claim Certificate." The language next to the box checked by Colonel Hazan read:

I hereby claim the amount shown above as being the correct settlement amount due me for this correction of my military records. I have not received any payment from the United States and I will not accept any other payment from the United States for this correction of my records. *My acceptance of this settlement constitutes a complete release by me of any claim against the United States on account of this matter.* [Emphasis added.]

This form was signed by Colonel Hazan and dated March 15, 1986.

Plaintiff filed his claim in this Court on May 15, 1986. In its motion for summary judgment, filed February 18, 1987, the Government argues that the general release signed by Colonel Hazan, and the statutory provisions of 10 U.S.C. § 1552(c) (1982), bar the plaintiff's claim in this Court. The plaintiff filed a cross-motion for summary judgment on June 12, 1987. The plaintiff contends that the claim being pursued in this Court is separate and distinct from that for which settlement was accepted. Thus, the release is inapplicable. In the same breath, however, the plaintiff also argues that the denial of the supposedly separate and distinct claim by the Board constitutes arbitrary and capricious action. On June 18, 1987, the defendant filed its reply brief and also filed a Motion to Stay Consideration of Plaintiff's Cross-Motion for Summary Judgment. In support of its stay motion, the defendant correctly notes that if the execution of the general release acts as a bar to further action, then the Court need not consider the plaintiff's cross-motion on the merits.

### Discussion

The determination of whether defendant's motion to stay should be granted necessarily involves an analysis of whether the Government is correct in its assertion that plaintiff's action in this Court is barred. As a result, the appropriate place to begin is with defendant's motion for summary judgment.

Section 1552(c) of Title 10 is entitled "Correction of military records: claims incident thereto" and states in pertinent part that "[a] claimant's acceptance of a settlement under this section *fully satisfies the claim concerned.*" 10 U.S.C. § 1552(c) (1982) (emphasis added).

The claim currently before this Court is identical to that which was presented to and denied by the Board. The plaintiff, before the Board, requested that he be

given a medical disability discharge in lieu of his July 14, 1978 honorable discharge, or (in the alternative) that he be given all pay and benefits he would have earned as a paid Army reservist from December 28, 1979 through his retirement on September 28, 1984. The Board, in its final decision of July 10, 1985, denied the plaintiff the medical disability discharge, but partially granted his alternative request that he be given all pay and allowances that he would have earned had the Army not erroneously retired the plaintiff from the Army Reserve on December 28, 1979. The Board granted the pay and allowances part of the plaintiff's claim from December 28, 1979, through his reinstatement date of September 20, 1982, but denied any benefits after September 10, 1982. Thereafter, the plaintiff, on March 15, 1986, signed the general settlement release and accepted some $15,430 from the Government on his claim presented to the Board. Two months later, on May 15, 1986, the plaintiff filed his action here, requesting the Court to overturn the Board's decision in regard to the medical disability discharge, or (in the alternative) grant the plaintiff additional Reserve pay and allowances from September 10, 1982 through September 28, 1984 when he was retired. Thus, the relief currently sought here constitutes a part of the claim decided adversely by the Board, and is a part of the claim to which the release relates.

As noted above, the general release applied to the entire claim presented to the Board by the plaintiff. The plaintiff's contention that the release was "limited" in scope, and that it only applied to the corrected portions of his claim as evidenced by his further correspondence with the Board, is simply incorrect. There was nothing "limiting" on the face of the general release itself. Moreover, if the plaintiff did not intend the general release to release his entire claim before the Board, it was incumbent on him to refuse the settlement offered by the Government and wait until his claim could be resolved before the Board or in this Court before accepting payment.

In a case very similar in scope to the plaintiff's, the Court of Claims found against the claimant on this very issue. In that case, the Court stated:

Under the statute and the plaintiff's signed statement, the plaintiff's acceptance of the award was a release of all claims he had presented to the Board, and not just of the portion of the claims the Board allowed. The Comptroller General has ruled that acceptance of a partial award prevents a serviceman from seeking further relief. 57 Comp. Gen. 554, 558 (1978). "[T]he provision was intended to foreclose a claimant, after accepting settlement, from disputing the record correction on which it is based." 45 Comp.Gen. 140, 142 (1965). In order to seek additional relief, the plaintiff would have had to refuse the settlement and wait until his claim in this court was resolved before accepting payment.

In those cases where releases have been held not to bar additional claims, either the plaintiffs had two claims and the release of one claim did not release the other, *Hiett v. United States*, 131 Ct.Cl. 585, 130 F.Supp. 338 (1955); 34 Comp.Gen. 456, 459 (1955) (first release "was not offered or intended as a settlement of all claims"), or the award was based on a computation error and mutual mistake. 45 Comp.Gen. 140. In this case, in contrast, the plaintiff filed a single claim with the Corrections Board. The Board granted part of it and denied part. The plaintiff is not seeking relief here based on the Board's favorable action, but is challenging the Board's action to the extent the correction of his records did not give him the full relief he sought. The plaintiff's release of "any claim against the United States on account of this matter" bars him from doing that. By accepting the relief recommended by the Board, the plaintiff has released his claim for the relief denied by the Board.

*Pilgreen v. United States*, 231 Ct.Cl. 903, 905 (1982).

Because the plaintiff's action is clearly barred, the Court finds the plaintiff's

Cross-Motion for Summary Judgment and the defendant's Motion to Stay Consideration of the Plaintiff's Cross-Motion for Summary Judgment to be moot. Although the plaintiff requested an oral hearing in this case, it was not deemed necessary in view of the factual background discussed above.

### CONCLUSION

For the reasons discussed above, the defendant's Motion for Summary Judgment is granted and the case is to be dismissed.

As a result, the plaintiff's Cross-Motion for Summary Judgment and the defendant's Motion to Stay Consideration of the Plaintiff's Cross-Motion for Summary Judgment are denied as moot.

Each party to bear its own costs.