Thomas **PECKHAM** and Patricia Peckham, Plaintiffs,

v.

**UNITED STATES**, Defendant.

No. 03–1215C.

United States Court of Federal Claims.

June 24, 2004.

Thomas Peckham and Patricia Peckham, Erie, Pennsylvania, pro se.

Lindsay Williams, Trial Attorney; David M. Cohen, Director, Commercial Litigation Branch; Peter D. Keisler, Assistant Attorney General, Civil Division, Department of Justice, for the defendant.

## OPINION

HORN, Judge.

### FINDINGS OF FACT

Defendant, the United States Forest Service, granted a special use permit to Thomas and Patricia Peckham on June 29, 1988. The special use permit, signed individually by plaintiffs Thomas and Patricia Peckham, as well as by Michael J. Rogers on behalf of the government, gave the plaintiffs the right to operate Boulder Oaks Resort, a 7.56 acre recreational facility located in the Cleveland National Forest in California. The special use permit also stipulated that the contract term would end on December 31, 1996.

In a letter dated November 3, 1993, the government notified the Peckhams that it planned to revoke their special use permit to operate Boulder Oaks Resort. The United States Forest Service stated that it had discovered several health and safety violations on site, including unauthorized electrical, water, and sewage hookups, public toilets in disrepair, the presence of underground storage tanks which did not comply with state and local regulations, and the permanent siting of mobile homes in the resort. The letter cited numerous notices of violation resulting from a number of state and federal inspections. After the Chief of the Forest Service issued a final administrative decision which upheld the revocation, the Peckhams were directed to cease all operations on Boulder Oaks Resort by July 1, 1994. The Peck-

hams, however, continued to operate Boulder Oaks Resort beyond the July 1, 1994 deadline.

In response to the Peckhams' continued operation of Boulder Oaks Resort beyond July 1, 1994, the government brought an action for ejectment in the United States District Court for the Southern District of California on July 22, 1998. *United States v. Peckham,* No. 98–1352, slip op. at 1 (S.D.Cal. May 25, 1999); *United States v. Peckham,* No. 98–1352, slip op. at 2 (S.D.Cal. May 25, 2000). The District Court granted the government's motion for summary judgment on the ejectment claim and ordered the Peckhams to vacate the premises by June 30, 1999. On May 25, 2000, the District Court granted damages in favor of the government in the amount of $90,954.50 as compensation for lost lease payments and clean-up costs. The plaintiffs appealed to the United States Court of Appeals for the Ninth Circuit. After a limited remand, the District Court entered an amended judgment against the Peckhams in the amount of $57,954.50, based on the absence of liability for removal of the underground storage tanks. *United States v. Peckham,* No. 98–1352, slip op. at 6–7 (S.D.Cal. Aug. 15, 2001). On November 5, 2001, the Ninth Circuit dismissed as untimely the Peckhams' motion for reconsideration regarding the merits of the District Court's original entry of judgment for the government in the ejectment action and affirmed the decision of the District Court to deny the Peckhams' motion to reconsider. *United States v. Peckham,* 23 Fed.Appx. 683, 684 (9th Cir.2001).

In December, 2003, following lengthy litigation and protracted dealings between the parties, the Peckhams and the government reached a settlement agreement with respect to the federal court litigation in California. Thomas and Patricia Peckham, as well as their legal counsel, individually signed and dated the settlement agreement on December 15, 2003. The government signed the agreement on December 18, 2003.[1] The gov-

---

1. The signature lines of the "STIPULATION AND AGREEMENT FOR COMPROMISE SETTLEMENT AND RELEASE," filed in the United States District Court for the Southern District of California, label the Peckhams as the "plaintiffs" and the Assistant United States Attorney signing for the government as the "defendant." However, the caption of the settlement agreement as

ernment agreed to lower its damages from $57,954.50 to $42,500.00. In exchange, as is more fully discussed below, the Peckhams agreed to release and discharge the government from any claims that the Peckhams have or may ever have relating to Boulder Oaks Resort. The settlement agreement stated that the parties "desire[d] to resolve all disputes between them pertaining to Boulder Oaks Resort without the need for further litigation or collection efforts."

Thomas and Patricia Peckham filed a complaint in this court on May 16, 2003. An amended complaint was filed on October 29, 2003. The case was originally assigned to the Honorable Edward J. Damich and reassigned to this judge on January 6, 2004. In their amended complaint, the plaintiffs allege that the government breached provisions of the special use permit starting in 1990 and continuing through 2000. The Peckhams' allegations include that the government breached its contract by requiring all new buyers of Boulder Oaks Resort to renegotiate the thirty day maximum length of stay for resort guests, by failing to pay the Peckhams for improvements to the property, by failing to correct the special use permit end date from 1996 to 1998 as allegedly, orally promised, and by breaching an oral agreement for automatic renewal of the special use permit every ten years. The Peckhams cite to records attached to the amended complaint indicating that previous owners of the Boulder Oaks property had continuing contracts and possessed the right to sell the resort at any time. Those provisions do not, however, appear in and are not referenced in the Peckhams' signed, 1988 special use permit included in the record. Furthermore, the Peckhams allege that "[t]he United States destroyed and stole Plaintiffs [sic] assets without any compensation."

The defendant has filed a motion for summary judgment, in which it argues that the settlement agreement is binding and dispositive, and bars the Peckhams' current claims before this court. In a responsive filing, the Peckhams state that "[t]he Plaintiffs signed a

well as the substantive language of the agreement clearly indicate that this is a typographical error. The word "plaintiff" throughout the doc-

compromise settlement with the United States in order to be able to conduct business in Pennsylvania. The Plaintiffs never signed or would ever sign an agreement that gives away the Plaintiffs [sic] constitutional rights." (footnote omitted).

## DISCUSSION

The defendant's motion for summary judgment was filed pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC). RCFC 56 is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ.P.) and is similar both in language and effect. Both rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); Fed.R.Civ.P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d 1253, 1257 (Fed.Cir.2001); Avenal v. United States, 100 F.3d 933, 936 (Fed.Cir.1996), reh'g denied (1997); Creppel v. United States, 41 F.3d 627, 630–31 (Fed.Cir.1994). A fact is material if it will make a difference in the result of a case under the governing law. Irrelevant or unnecessary factual disputes do not preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. at 247–48, 106 S.Ct. 2505; see also Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d at 1257; Curtis v. United States, 144 Ct.Cl. 194, 199, 168 F.Supp. 213, 216 (1958), cert. denied, 361 U.S. 843, 80 S.Ct. 94, 4 L.Ed.2d 81 (1959), reh'g denied, 361 U.S. 941, 80 S.Ct. 375, 4 L.Ed.2d 361 (1960).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence and determine the truth of the case presented, but to determine whether there is a genuine issue for trial.

ument actually refers to the government, which brought the ejectment action, and the word "defendant" refers to the Peckhams.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. 2505; *see, e.g., Ford Motor Co. v. United States,* 157 F.3d 849, 854 (Fed.Cir. 1998) (the nature of a summary judgment proceeding is such that the trial judge does not make findings of fact); *Johnson v. United States,* 49 Fed.Cl. 648, 651 (2001), *aff'd,* 317 F.3d 1331 (Fed.Cir.2003); *Becho, Inc. v. United States,* 47 Fed.Cl. 595, 599 (2000). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250–52, 106 S.Ct. 2505; *Jay v. Sec'y of Dep't of Health and Human Servs.,* 998 F.2d 979, 982 (Fed.Cir.), *reh'g denied and en banc suggestion declined* (1993). When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Hall v. Aqua Queen Mfg., Inc.,* 93 F.3d 1548, 1553 n. 3 (Fed.Cir.1996). In such a case, there is no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings. Summary judgment:

> saves the expense and time of a full trial when it is unnecessary. When the material facts are adequately developed in the motion papers, a full trial is useless. "Useless" in this context means that more evidence than is already available in connection with the motion for summary judgment could not reasonably be expected to change the result.

*Dehne v. United States,* 23 Cl.Ct. 606, 614–15 (1991) (citing *Pure Gold, Inc. v. Syntex, Inc.,* 739 F.2d 624, 626 (Fed.Cir.1984)), *vacated on other grounds,* 970 F.2d 890 (Fed.Cir.1992); *United States Steel Corp. v. Vasco Metals Corp.,* 55 C.C.P.A. 1141, 394 F.2d 1009, 1011 (1968).

Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. 2505; *Eli Lilly & Co. v. Barr Labs., Inc.,* 251 F.3d 955, 971 (Fed.Cir.2001), *cert. denied,* 534 U.S. 1109, 122 S.Ct. 913, 151 L.Ed.2d 879 (2002); *Gen. Elec. Co. v. Nintendo Co.,* 179 F.3d 1350, 1353 (Fed.Cir. 1999). In other words, if the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. at 587–88, 106 S.Ct. 1348; *Monon Corp. v. Stoughton Trailers, Inc.,* 239 F.3d at 1257; *Wanlass v. Fedders Corp.,* 145 F.3d 1461, 1463 (Fed.Cir.), *reh'g denied and en banc suggestion declined* (1998).

The initial burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Trilogy Communications, Inc. v. Times Fiber Communications, Inc.,* 109 F.3d 739, 741 (Fed.Cir.1997) (quoting *Conroy v. Reebok Int'l, Ltd.,* 14 F.3d 1570, 1575 (Fed.Cir.1994), *reh'g denied and en banc suggestion declined* (1995)); *Lockwood v. Am. Airlines, Inc.,* 107 F.3d 1565, 1569 (Fed.Cir.1997). If the moving party makes such a showing, the burden shifts to the nonmoving party to demonstrate that a genuine dispute regarding a material fact exists by presenting evidence which establishes the existence of an element essential to its case upon which it bears the burden of proof. *See Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. 2548; *Am. Airlines v. United States,* 204 F.3d 1103, 1108 (Fed.Cir.2000); *see also Schoell v. Regal Marine Indus., Inc.,* 247 F.3d 1202, 1207 (Fed.Cir.2001).

Pursuant to RCFC 56, a motion for summary judgment may succeed whether or not accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. *Celotex Corp. v. Catrett,* 477

U.S. at 324, 106 S.Ct. 2548. Generally, however, in order to prevail by demonstrating that a genuine issue for trial exists, the non-moving party must go beyond the pleadings by use of evidence such as affidavits, depositions, answers to interrogatories and admissions. *Id.* After reviewing the parties' submissions, the court finds that there are no material facts in dispute to prevent resolving the case by means of summary judgment.

The court recognizes that the plaintiffs are proceeding *pro se* and, accordingly, the plaintiffs may be entitled to more liberal construction of their pleadings. *See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (requiring that allegations contained in *pro se* complaints be held to "less stringent standards than formal pleadings drafted by lawyers"), *reh'g denied,* 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972). The United States Supreme Court reiterated this standard in *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), *reh'g denied,* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977), and in *Hughes v. Rowe,* 449 U.S. 5, 9–10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). The court notes, however, that, as discussed above, the Peckhams have extensive experience as litigators in Federal Courts. Thus, although the court has afforded these plaintiffs a great deal of additional latitude given their *pro se* status, it is difficult to understand why this case has been fraught with failures to comply with court orders, including a failure to appear for a status conference and multiple failures to file pleadings in a timely fashion.[2]

The words of the December, 2003 "STIPULATION AND AGREEMENT FOR COMPROMISE SETTLEMENT AND RELEASE" entered into by Thomas and Patricia Peckham and the government are clear and resolve the case currently before the court. A settlement agreement is a contract. *See Fausto v. United States* 16 Cl.Ct. 750, 754 (1989); *see also Greco v. Dep't of the Army,* 852 F.2d 558, 560 (Fed.Cir.1988) ("It is axiomatic that a settlement agreement is a contract."); *Kasarsky v. Merit Sys. Prot. Bd.,* 296 F.3d 1331, 1336 (Fed.Cir.2002) ("Disputes involving settlement agreements are governed by contract principles."). The interpretation of a government contract is a matter of law. *See Grumman Data Sys. Corp. v. Dalton,* 88 F.3d 990, 997 (Fed.Cir. 1996); *Hol–Gar Mfg. Corp. v. United States,* 169 Ct.Cl. 384, 386–87, 351 F.2d 972, 973 (1965). The language of the "contract must

**2.** A March 3, 2004 court order, which was mailed and provided by facsimile copy to plaintiffs, and a follow-up telephone call with the court's law clerk, directed Thomas and Patricia Peckham, who individually signed the complaint filed in this court, each to be available for a March 11, 2004 status conference. Patricia Peckham, however, failed to appear for the court-ordered conference on March 11, 2004. In plaintiffs' response to the court's order directing Patricia Peckham to explain her failure to appear, and for the parties to explain why this case is not resolved by the December, 2003 settlement agreement, plaintiffs failed to address either of the issues and what they filed failed to comply with the procedural rules of the court. On April 5, 2004, the court offered the plaintiffs a second opportunity to address the two issues and indicated its willingness to accord the plaintiffs additional leniency in light of their *pro se* status. The plaintiffs, however, failed to respond to the court's April 5, 2004 order. On April 23, 2004, the court issued yet another order, stating: "The court had hoped that this case would have been resolved between the parties and in the absence of court intervention. However, in light of the plaintiffs' lack of cooperation and their failure to comply with court orders, that course of action appears unlikely to succeed." As a result, the court established a briefing schedule for dispositive motions to ensure that the case would be resolved fairly and in a timely fashion.

The defendant filed its motion for summary judgment on May 6, 2004. The plaintiffs, once again, failed to comply with a court order by failing to file a timely response to defendant's summary judgment motion. On June 7, 2004, the court's law clerk telephoned the parties to ascertain whether plaintiffs intended to file a response to defendant's motion. In that conversation, even though the plaintiffs' address had not changed and they had received previously filed documents mailed from this court, the plaintiffs represented that they had not received any of the filings since the last status conference in March, 2004. Nonetheless, interested in getting to the merits of the case and to understand the substantive arguments, the court, once again, accorded the plaintiffs leniency in light of their *pro se* status. The court provided plaintiffs the relevant, allegedly missed filings in this case and permitted the plaintiffs a third opportunity to *respond to the issues raised in this case.* Once again, the plaintiffs failed to timely submit the required response to this court. Ultimately, a response was received and filed by leave of the court.

be given that meaning that would be derived from the contract by a reasonable intelligent person acquainted with the contemporaneous circumstances." *Id.*, 169 Ct.Cl. at 388, 351 F.2d at 975. Moreover, words are to be given their plain and ordinary meanings. *Thanet Corp. v. United States,* 219 Ct.Cl. 75, 82, 591 F.2d 629, 633 (1979).

The United States Court of Appeals for the Federal Circuit stated in *Jowett, Inc. v. United States* that:

> In interpreting a contract, we begin with the plain language. We give the words of the agreement their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning. In addition, we must interpret the contract in a manner that gives meaning to all of its provisions and makes sense.

*Jowett, Inc. v. United States,* 234 F.3d 1365, 1368 (Fed.Cir.2000) (citations omitted); *see also Hunt Constr. Group, Inc. v. United States,* 281 F.3d 1369, 1372 (Fed.Cir.2002) ("We begin with the plain language when interpreting a contract .... The contract must be considered as a whole and interpreted to effectuate its spirit and purpose, giving reasonable meaning to all parts.") (citations omitted); *Giove v. Dep't of Transp.,* 230 F.3d 1333, 1340–41 (Fed.Cir.2000) ("In addition, we must interpret the contract in a manner that gives meaning to all of its provisions and makes sense. Further, business contracts must be construed with business sense, as they naturally would be understood by intelligent men of affairs.") (citations omitted). Thus, if the "provisions are clear and unambiguous, they must be given their plain and ordinary meaning." *Alaska Lumber & Pulp Co. v. Madigan,* 2 F.3d 389, 392 (Fed.Cir.), *reh'g denied* (1993).

■ When the terms of a contract are clear and unambiguous, there is no need to resort to extraneous circumstances for its interpretation. *See Sea–Land Serv., Inc. v. United States,* 213 Ct.Cl. 555, 567, 553 F.2d 651, 658 (1977), *cert. denied,* 434 U.S. 1012, 98 S.Ct. 724, 54 L.Ed.2d 755 (1978). Construction of an unambiguous writing, therefore, is an appropriate matter for summary judgment. *See Martin v. United States,* 20 Cl.Ct. 738, 745 (1990); *Kelley v. United States,* 19 Cl.Ct. 155, 161 (1989). A written agreement is ambiguous when a plain reading of the contract could result in more than one reasonable interpretation. *See Metric Constructors, Inc. v. NASA,* 169 F.3d 747, 751 (Fed.Cir.1999); *Grumman Data Sys. Corp. v. Dalton,* 88 F.3d at 997; *A–Transport Northwest Co. v. United States,* 36 F.3d 1576, 1584 (Fed.Cir.1994) ("A contract is ambiguous only when it is susceptible to two reasonable interpretations."); *Tacoma Dept. of Pub. Utils. v. United States,* 31 F.3d 1130, 1134 (Fed.Cir.1994) (citing *Hills Materials Co. v. Rice,* 982 F.2d 514, 516 (Fed.Cir.1992)). It is not enough that the parties differ in their interpretation of the contract clause. *See Cmty. Heating & Plumbing Co. v. Kelso,* 987 F.2d 1575, 1578 (Fed.Cir.1993).

■ In the case currently before the court, the language of the settlement agreement, titled "STIPULATION AND AGREEMENT FOR COMPROMISE SETTLEMENT AND RELEASE," contains no ambiguity and leaves no room for varying interpretations. Sections 1 and 2 of the settlement agreement explain the background and general purpose of the agreement as follows:

> The parties hereby agree to settle and compromise the disputes between them pertaining to the site in the Cleveland National Forest known as Boulder Oaks Resort, under the terms and conditions set forth herein, including but not limited to the claims raised in the above entitled action ("this Action").

> Plaintiff [the government] previously filed the above titled action to eject Defendants [Thomas and Patricia Peckham] from Boulder Oaks Resort, and recover damages, among other things. The Court has entered judgment against Defendants and in favor of Plaintiff. Defendants dispute the judgment and have filed various claims against the United States, from time to time, relating to or arising from Boulder Oaks Resort. The parties desire to resolve all disputes between them pertaining to Boulder Oaks Resort without the need for further litigation or collection efforts.

In relevant part, the agreement provides in Section 3.b:

Defendants [Thomas and Patricia Peckham] and each of them further agree to dismiss all appeals and motions in this Action, and to dismiss and withdraw all claims and demands they have made, submitted or filed, formal or informal, administrative or other, relating to or arising from Boulder Oaks Resort or any lands or other real and personal property now or previously at, on or in the Cleveland National Forest. This shall include but is not limited to claims arising out of the actions or omissions of employees or other representatives of the Forest Service, U.S. Department of Agriculture or U.S. Department of Justice relating to (a) Boulder Oaks Resort, (b) any permit issued with respect to Boulder Oaks Resort, (c) Defendants' requests for information and other actions pertaining to. their assertion of rights and interests in or to Boulder Oaks Resort, and (d) Plaintiff's enforcement of claims, obligations, duties and rights relating to Boulder Oaks Resort, including prosecution and enforcement of claims in this Action.

The settlement agreement continues, at section 3.c:

Defendants [Thomas and Patricia Peckham] and each of them release and forever discharge Plaintiff [the government], its current, former and future officials, agencies, services, departments, representatives, officers, employees, agents, assigns and attorneys, from any and all claims, demands, rights or causes of actions, liens, causes of action, and all other liabilities whatsoever, whether known or unknown, suspected or unsuspected, that they have had, now have or hereafter may have relating in any way to Boulder Oaks Resort or any lands or other real and personal property now or previously at, on or in the Cleveland National Forest. This release and discharge shall extend to, but is not limited to, claims arising out of the actions or omissions of employees or other representatives of the Forest Service, U.S. Department of Agriculture or U.S. Department of Justice relating to (a) Boulder Oaks Resort, (b) any permit issued with respect to Boulder Oaks Resort, (c) Defendants' requests for information and other actions pertaining to their assertion of rights and interests in or to Boulder Oaks Resort, and (d) Defendants' enforcement of claims obligations, duties and rights relating to Boulder Oaks Resort, including prosecution and enforcement of claims in the present litigation.

Finally, the closing portion of section 3 of the settlement agreement states:

In connection with such release and discharge, Defendants acknowledge that they are aware that they may hereafter discover claims presently unknown or unsuspected or facts in addition to or different from those which they now know or believe to be true, with respect to the matters released herein. Nevertheless, it is the intention of Defendants through this release, and with the advice of counsel, to fully, finally and forever settle and release all such matters, and all claims relative thereto, that heretofore have existed, now exist, or hereafter may exist between the Defendants on the one hand, and Plaintiff on the other. In furtherance of such intention, this release shall be and remain in effect as a full and complete release of such matters, notwithstanding the discovery or existence of any such additional or different claims or facts relating thereto.

The Peckhams' amended complaint filed in this court focuses entirely on allegations of problems and concerns with the implementation and alleged breaches of the special use permit issued by the defendant to the plaintiffs to operate the Boulder Oaks Resort, and, therefore, falls squarely within the terms of the December, 2003 settlement agreement entered into and filed in the United States District Court action in the Southern District of California. If the Peckhams did not intend to release the government from the present breach claims, they could have preserved their claims in the settlement agreement or rejected the proposed settlement until their claims could be resolved in the appropriate court or courts. *See Pilgreen v. United States*, 231 Ct.Cl. 903, 903, 1982 WL 25802 (1982); *Hazan v. United States*, 13 Cl.Ct. 66, 70 (1987), *aff'd*, 847 F.2d 842 (Fed.Cir.1988). Instead, both Thomas and Patricia Peckham, as well as their legal

counsel, signed and dated the settlement agreement. The "STIPULATION AND AGREEMENT FOR COMPROMISE SETTLEMENT AND RELEASE" entered into by the parties in the District Court action, which are the same parties currently before this court, is binding and dispositive of the instant case. The court should not address the merits of the Peckhams' breach of contract claims against the government which have been previously resolved by settlement agreement in another federal court.

## CONCLUSION

Thomas and Patricia Peckham, as well as their legal counsel, voluntarily signed a "STIPULATION AND AGREEMENT FOR COMPROMISE AND RELEASE" to end the litigation in the United States District Court for the Southern District of California which released the government from all past and future claims relating in any way to Boulder Oaks Resort. This binding settlement agreement, entered into the record by another federal court, after extensive litigation, constitutes an enforceable contract between the two parties. The plain meaning of the repetitive settlement language makes it clear that the Peckhams' current claims against the government have been previously resolved and are barred by the settlement agreement. The defendant's motion for summary judgment, therefore, is **GRANTED**. The clerk's office shall **DISMISS** plaintiffs' complaint, with prejudice, and enter **JUDGMENT** for the defendant.

**IT IS SO ORDERED.**